# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 01-2297

———————

Ronnie D. Gosney,      *
             *
  Plaintiff - Appellant,    *
             *  Appeal from the United States
  v.           *  District Court for the
             *  Eastern District of Arkansas.
The Reliable Life Insurance Company, *
             *
  Defendant - Appellee.    *

———————

Submitted: November 14, 2001

Filed: June 11, 2002

———————

Before BOWMAN, JOHN R. GIBSON, and STAHL,[1] Circuit Judges.

———————

JOHN R. GIBSON, Circuit Judge.

  Ronnie D. Gosney appeals from the district court order granting summary judgment in favor of the Reliable Insurance Company. Gosney's complaint against Reliable alleged a variety of intentional torts arising out of the revocation of Gosney's insurance license. The district court ruled Reliable had absolute immunity under Arkansas Code of 1987 Annotated § 23-64-219 (2001). We now reverse.

———————

  [1]The Honorable Norman H. Stahl, United States Circuit Judge for the First Circuit, sitting by designation.

We recite the facts in the light most favorable to Gosney, as we must given the procedural posture of this case. Greiner v. City of Champlin, 27 F.3d 1346, 1350 (8th Cir. 1994).

Gosney worked for Reliable as an insurance sales agent in south Arkansas from approximately 1991 to 1996. On January 26, 1996, Gosney resigned from Reliable due to alleged mistreatment by certain of Reliable's management personnel. Thereafter, Gosney joined United Insurance Company and continued his insurance sales business. In January 1997, Reliable either purchased or merged with United, and Gosney again found himself working for Reliable. There is evidence in the record that certain members of Reliable's management team then set out to get rid of Gosney by charging him for shortages in funds purportedly owed to the company from his prior term of employment with Reliable. Gosney claims he quit Reliable for a second time in November of 1997, as a result of the financial hardship caused by this plan to get rid of him. Reliable subsequently sent a notice to the Arkansas Insurance Department on December 2, 1997, stating that it was terminating Gosney's agent appointment with Reliable on account of a shortage. Gosney nevertheless obtained a letter of good standing from the Arkansas Insurance Commissioner on February 2, 1998, and went on to sell insurance in Mississippi.

In early 1999 Gosney returned to southeast Arkansas to sell insurance again. Reliable's management became aware of Gosney's return, and there is evidence in the record that they then set out "to get his license . . . to get him . . . out of the insurance business there" because of lingering animosity towards Gosney and because they were afraid Gosney would take business from them. On May 11, 1999, Reliable sent a complaint letter to the Arkansas Insurance Department accusing Gosney of theft.

A hearing was held on Reliable's complaint against Gosney on July 14, 1999. A member of Reliable's management team, who had allegedly previously "flipped off" Gosney upon seeing Gosney back in the area, testified on behalf of Reliable that

Gosney had taken money. Gosney was not present at the hearing, having never received notice, and the Insurance Commissioner accepted the allegations of Reliable and revoked Gosney's license. Gosney learned of the ruling from the media coverage and immediately pursued exoneration. The Insurance Commissioner eventually vacated the order and found Gosney "not guilty." As part of the exoneration proceedings, the Insurance Commissioner concluded (1) that the Reliable manager who had testified at the hearing subsequently admitted the documents originally submitted were not sufficient to prove a shortage, (2) that Reliable did not submit any additional documentation that would prove their allegations of theft, and (3) that the documents that were produced as a result of requests by the Insurance Department showed that many of the alleged shortage items were in fact remitted to Reliable by Gosney.

Gosney then brought the present action in Arkansas Circuit Court, and Reliable removed the case to federal court on the basis of diversity jurisdiction. The district court granted summary judgment to Reliable, holding that the letter Reliable sent to the Insurance Commissioner was part of the notice of termination Reliable was required to send under Arkansas law, and thus Reliable had absolute immunity from any suit arising therefrom.

"We review the district court's grant of summary judgment and its interpretation of state law de novo." Royal Ins. Co. of Am. v. Kirksville Coll. of Osteopathic Med., 191 F.3d 959, 961 (8th Cir. 1999). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

I.

Arkansas law immunizes insurers against liability for some communications made to the Insurance Commissioner. Section 219 of the state's insurance statutes provides:

> Any information as to the cause of termination of any [insurer's appointment of an agent] furnished the commissioner <u>as part of the notice of termination</u> shall be deemed a privileged communication and shall not be admissible in evidence in any action or proceedings other than those brought by the commissioner, nor shall any agent whose appointment has been so terminated have a cause of action against the insurer or any of its officers, directors, or employees by reason of the furnishing of such information to the commissioner.

Ark. Code Ann. § 23-64-219(d)(2) (2001) (emphasis added). We conclude the complaint letter, which Reliable provided to the Insurance Commissioner over 16 months after it sent the required notice, was not "part of" the notice covered by section 219, and thus Reliable is not absolutely immunized from suits arising out of the sending of it.

Section 219 requires notice to be sent "promptly." Ark. Code Ann. § 23-64-219(d)(1) (2001); <u>cf.</u> Ark. Code Ann. § 23-64-203(c)(2)(A) (2001) ("If the employment or appointment of any insurance agent is terminated by an insurance company because of . . . fraud, . . . the insurance company shall notify the commissioner within ten (10) working days . . . ."). The notice Reliable sent in December of 1997 was complete in itself--it set out both the fact of termination and the cause thereof.[2] <u>Cf.</u> <u>Webster's Third New International Dictionary</u> 1645 (1981)

_____

[2] Reliable's argument that the December 1997 notice "implied" that Reliable would be sending further information is disingenuous. Reliable wrote: "The certifications have not been completed at this time[.] If you need any further

(defining "part" as "an essential portion or integral element of something"). While we are not saying that information sent after such a completed notice may never constitute part of that notice for the purposes of section 219, here the information was sent well over a year later for no apparent reason. See Brief of Reliable at iii ("During the months following [Reliable's] initial contact with the Insurance Department, the [information later sent] literally lay on [an employee's] desk . . . ."). Thus, Reliable may only invoke the more general, qualified immunity provision of Arkansas law that governs any reports of agent fraud made by an insurer to certain third parties. Under this provision Reliable is entitled to immunity only to the extent it acted "[i]n the absence of fraud or bad faith."[3] Ark. Code Ann. § 23-60-111(a) (2001). As our earlier recitation of the facts makes clear, there is a genuine issue of material fact as to whether Reliable acted in bad faith. Thus summary judgment is inappropriate here.

---

information please direct inquiries [sic] to [Reliable]." If this language implies anything, it is that further information would only be forthcoming upon request.

[3] The district court, in rejecting this argument, stated that "[w]hile Reliable may be guilty of extremely sloppy paperwork and follow-up, Gosney has cited no authority for the proposition that an insurer may not submit follow-up information to the commissioner after sending an initial notice of termination, or that there is a time limit for doing so." Gosney v. The Reliable Life Ins. Co., No. 5:00CV00211 SWW, slip op. at 7 (E.D. Ark. May 3, 2001). We point out that what Reliable "may be guilty of" is a variety of intentional torts, and the issue is whether it is absolutely immunized under section 219. As our holding makes clear, declining to answer that question in the affirmative does not entail that an insurer may not submit follow-up information, or that there is a time limit therefor. It simply limits the circumstances in which the insurer may do so without being answerable for any intentional torts it thereby commits.

## II.

We also conclude that Gosney's complaint asserts a number of claims based on conduct independent of the complaint letter. Gosney alleges that Reliable, through its agents, made false representations to the Insurance Commissioner at the July 14, 1999, hearing resulting in the revocation of Gosney's insurance license. These allegations are amply supported by the subsequent findings of the Insurance Commissioner. These representations do not constitute "information . . . furnished . . . as part of the notice of termination," and so are not governed by section 219. Absolutely immunizing actors from liability for intentional torts has serious consequences, and we will not extend such immunity beyond what the plain language of a statute requires. Cf. Westfall v. Erwin, 484 U.S. 292, 295 (1988) ("[A]bsolute immunity contravenes the basic tenet that individuals be held accountable for their wrongful conduct."); 63C Am. Jur. 2d Public Officers and Employees § 301 ("[O]fficial immunity must be narrowly construed in light of the fact that it is an exception to the general rule of liability.").

## III.

Accordingly, we reverse the district court's grant of summary judgment and remand for further consideration of Gosney's complaint.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-