**PACIFIC EMPLOYERS INSURANCE COMPANY, a California Corporation, Plaintiff,**

v.

**SERVCO PACIFIC INC., a Hawaii Corporation; and Island Insurance Company, Ltd., a Hawaii Corporation, Defendants.**

No. 01–CV–252.

United States District Court, D. Hawai'i.

June 19, 2003.

See also 193 F.Supp.2d 1183.

Peter W. Olson, Stacey T. Kawasaki-Djou, Cades Schutte Fleming & Wright, Honolulu, HI, W. Thomas Fagan, Kelvin H. Kaneshiro, Reinwald O'Connor & Playdon LLP, Honolulu, HI, Ray Tamaddon, Bruce N. Telles, Berman & Aiwasian, Los Angeles, CA, Robert J. Romero, Hinshaw & Culbertson, San Francisco, CA, for Plaintiff.

Bruce H. Wakuzawa, Peter S. Knapman, Alston Hunt Floyd & Ing, Honolulu, HI, Alan B. Burdick, Margery S. Bronster, Bronster Crabtree & Hoshibata, Honolulu, HI, James R. Murray, Christie L. Snyder, Gordon Murray Tilden, Seattle, WA, Roy F. Hughes, Ross N. Taosaka, Hughes & Taosaka, Honolulu, HI, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

SAMUEL P. KING, District Judge.

*INTRODUCTION and BACKGROUND*

This is an insurance dispute arising out of the same facts that led to another case presently before this Court, *Servco Pacific, Inc. v. Damon Estate, et al.,* Civ. No. 98–272SPK/BMK. The *Servco Pacific, Inc. v. Damon Estate* matter arose from environmental pollution at a Pukoloa street site leased by Servco Pacific, Inc. ("Servco") in the Mapunapuna area of Honolulu, and corresponding State of Hawaii, Department of Health, regulatory proceedings. *See Servco Pacific, Inc. v. Dods,* 193 F.Supp.2d 1183 (D.Haw.2002). In this insurance coverage case, Plaintiff Pacific Employers Insurance Company ("PEIC") is Defendant Servco's excess liability carrier. Defendant Island Insurance Co. ("Island") is Servco's primary liability carrier.

In November of 2000, Servco and Island entered into a settlement agreement for $1.5 million, purportedly resolving all coverage questions between Servco and Island arising from all environmental liability (including the contamination and remediation of the Pukoloa Street property as well as "any current and future Environmental Claim," "whether known or unknown," regarding Servco's properties). Claiming that the primary coverage with Island was exhausted, Servco then looked to PEIC for further defense and indemnity coverage. After PEIC refused to defend, this suit ensued.

PEIC's suit seeks declaratory relief regarding coverage, claiming PEIC has no duty to defend or indemnify Servco. PEIC also named Island as a defendant, contending that if the Court concludes that PEIC must defend or indemnify Servco, then PEIC would be entitled to subrogation or contribution from Island. Servco counterclaimed against PEIC for declaratory relief, claiming it is entitled to a defense and indemnity; Servco's countersuit also asserts breach of contract and bad faith claims against PEIC. This order rules on various motions for summary judgment or partial summary judgment filed by each party. For the reasons set forth, the motions are GRANTED in part and DENIED in part.

### DISCUSSION

The broad question in the present suit is whether PEIC has a duty to defend and indemnify Servco for either or both of (1) the State Department of Health proceeding[1] whereby Servco (and perhaps other "PRPs" or "potentially responsible parties") is required to remediate the Pukoloa Street property and (2) the *Servco Pacific, Inc. v. Damon Estate* matter (including counterclaims against Servco by Damon Estate),[2] which is primarily a CERCLA[3] action to determine PRPs. (As described in *Servco Pacific,* 193 F.Supp.2d at 1186–90, Servco is the current lessee of property owned in fee by Damon Estate; Servco and Damon Estate and other prior lessees are potentially responsible for environmental clean-up under CERCLA.) The insurance coverage issues depend upon several sub-issues of law. Also at issue in the suit

---

1. The administrative proceeding is also referred to as "the DOH proceeding" throughout this order.

2. *Servco Pacific, Inc. v. Damon Estate et al.,* Civ. No. 98–272SPK/BMK, is also referred to as "the PRP action" throughout this order.

3. "CERCLA" is the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601 et seq. The state equivalent under Hawaii law is encompassed in Haw.Rev.Stat. ch. 128D.

is whether PEIC's refusal to defend has constituted bad faith or a breach of contract.

In an order issued earlier this year, the Court denied Island's Motion for Judgment on the Pleadings, finding that PEIC's claim against Island is ripe even if recovery by PEIC against Island depends wholly upon PEIC first losing the coverage issues against Servco. The Court also found that, despite Island's settlement with Servco regarding the primary insurance coverage, PEIC had stated possible claims against Island. PEIC stated a claim for equitable indemnity or contribution, and Island could not be dismissed at that stage given the lack of an evidentiary record (e.g., no settlement agreement, no insurance policies etc.). PEIC's contention was and is that, despite settling with Island, Servco has not exhausted that primary coverage so as to trigger excess coverage. That is—assuming as true the allegations in the complaint—the Court determined that PEIC might be able to recover on an equitable basis from Island, if PEIC is determined to have some coverage duties. The merits of the suit were not before the Court at that time.

There are now four motions before the Court.

First, Island has essentially renewed its Motion for Judgment on the Pleadings with a more complete evidentiary record, asking for summary judgment in its favor given its settlement with Servco.

Second, Servco has filed a Motion for Partial Summary Judgment, seeking a declaration that PEIC owes a duty to defend Servco against both (1) the DOH proceeding regarding cleanup and (2) the PRP action, which could include both fees and costs to prosecute that action, as well as fees and costs to defend against Damon Estate's counterclaim against Servco. Servco seeks defense costs starting from November 21, 2000 (the date of the settlement with Island), that is, after Island's primary coverage obligations purportedly ended.

Third, PEIC has a motion seeking a declaration that it owes no duty to defend Servco from the DOH proceeding or to indemnify as to the PRP action, arguing that (1) its coverage obligations extend only to "suits," not environmental agency enforcement proceedings such as the DOH proceeding; (2) a "qualified pollution exclusion" excludes coverage for all but "sudden and accidental" pollution; and (3) its duties have not been triggered because Servco has not "exhausted" its indemnity limits with Island, which is necessary to trigger any potential excess coverage.

Fourth, PEIC seeks summary judgment on Servco's claims for bad faith and punitive damages. It invokes a "genuine dispute" rule, claiming that even if it does not prevail on its coverage motion, there was at least a genuine dispute about coverage such that it cannot be liable for bad faith or punitive damages. *See, e.g., Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 992 (9th Cir.2001) ("Under California law, a bad faith claim can be dismissed on summary judgment if the defendant can show that there was a genuine dispute as to coverage[.]") (citations omitted).

All four motions depend in part upon common questions of law or fact. This order, then, essentially deals with all four motions simultaneously by addressing those common questions.

### 1. Was the Island/Servco primary policy "exhausted?"

 Before duties in PEIC's excess policy can be triggered, the Island primary policy must be "exhausted." [4] Island's pol-

---

**4.** PEIC's excess policy provides in relevant part (emphasis added):

icy has indemnity limits of $500,000. Island's distinct and broader duty to defend, however, is not limited by dollar amount. *See, e.g., Commerce & Indus. Ins. Co. v. Bank of Hawaii*, 73 Haw. 322, 832 P.2d 733, 736 (1992) (distinguishing duty to defend from duty to indemnify). Rather, Island's policy provides that Island "shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit [$500,000] of [Island's] liability has been exhausted by payment of judgments or settlements.". [Decl. of Kaili–Ho, Exh. 2 at S002968]. In general, PEIC's duty to defend, if any, does not begin until Island's has ended.

The $1.5 million settlement between Island and Servco did not allocate amounts between indemnity and defense costs, nor did it specifically allocate an amount just to the Pukoloa Street properties.[5] Further, neither the DOH proceeding nor the PRP action are completed. That is, they have not been adjudicated or settled. Costs are continuing to mount—both to defend the DOH proceeding and the PRP action, as well as for various tasks involved in remediation (e.g., structure and tank removal, soil testing and investigation, etc.). Nevertheless, even if those costs are not finalized, Servco argues that it has easily incurred over $1 million in costs for remediation alone. This is well above the $500,000 indemnity limits of the Island policy. Servco argues that either or both of (1) the $1.5 million settlement (2) or the costs paid to date or as of the settlement date (exclusive of defense costs and attorneys fees), have exhausted Island's indemnity limits so as to trigger PEIC's excess policy.

Thus, exhaustion is a threshold issue because if the Court can determine as a matter of law that Island's indemnity lim-

PEIC will indemnify [Servco] for ultimate net loss in excess of the retained limit hereinafter stated which [Servco] shall become legally obligated to pay as damages because of

 . . . .

 B. property damage

 . . . .

to which this insurance applies, caused by an occurrence, and

 . . . .

(2) *If the limits of liability of the underlying insurance are exhausted because of personal injury, property damage or advertising injury during the period of this policy PEIC will*
(a) *have the right and duty to defend any suit* against [Servco] seeking damages on account of such personal injury, property damage or advertising injury, ...; but PEIC shall not be obligated to pay any claim or judgment or to defend any suit after PEIC's limit of liability has been exhausted by payment of judgments or settlements[.]

[Servco's Concise Statement of Material Facts, Decl. of Kaili–Ho, Exh. 1 at A001814].

 Similarly, PEIC must indemnify for "ultimate net loss" which the policy defines as

"the sum actually paid or payable in cash in the settlement or satisfaction of losses for which [Servco] is liable either by adjudication or compromise with the written consent of PEIC." *Id.* at A001816.

5. The agreement, however, does include the following preliminaries:

 WHEREAS, SERVCO tendered to IS-LAND a claim for defense and indemnity with respect to the contamination, clean up, and remediation of property located at 2819/2841 Pukoloa St., Honolulu, HI. [the subject Mapunapuna properties], 650 Kapiolani, Honolulu, HI. and. 609 South Street, Honolulu, HI. ("Claims").

 WHEREAS, ISLAND has denied that it has any obligation to defend and/or indemnify SERVCO with respect to the Claims and or with respect to any other environmental claims affecting property Servco owns.

 . . . .

 NOW THEREFORE, in consideration of the foregoing and of the mutual agreements in this Agreement, and intending to be legally bound, the Parties agree as follows: [Confidential Settlement Agreement at 1–2].

its were *not* "exhausted," then PEIC's excess policy has not been triggered. PEIC would be entitled to summary judgment. On the other hand, if Island's indemnity limits were indeed exhausted, then Island—having settled matters with Servco—would be entitled to summary judgment. Island's duties would have ended and PEIC could not seek contribution if PEIC were found to have to defend or indemnify. The Court would then proceed to address PEIC's other arguments (e.g., whether a "suit" is involved and whether the "qualified pollution exclusion" precludes coverage) to determine whether Servco could be entitled to excess coverage.

The Court has analyzed the written submissions, reviewed the case law cited by both PEIC and Servco, and considered oral argument. The case law from other jurisdictions is split; no published Hawaii case has ruled on the meaning of "exhaustion" in an excess insurance context. Sitting in diversity, the Court proceeds to "predict" Hawaii law. *See Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir.1980) ("In the absence of controlling forum state law, a federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the case"). In so doing, the Court is persuaded by and follows the reasoning in cases cited by Servco. *See, e.g., Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wash.2d 654, 15 P.3d 115, 135 (2000) (holding that payment of environmental remediation company costs are the "equivalent of settlement" for exhaustion purposes); *Weyerhaeuser Co. v. Aetna Cas. and Sur. Co.*, 123 Wash.2d 891, 874 P.2d 142, 145 (1994) (holding that coverage exists when insured engages in clean up in cooperation with an environmental agency).

The Court is unconvinced by PEIC's argument that its duty to defend, as an excess carrier, is not triggered unless and until the primary carrier pays its limits by either a judgment or settlement of the underlying claim. If that were so, then the excess carrier's duty to defend would be illusory. Requiring the primary carrier first to litigate the underlying claim to judgment, or make the payments in settling the claim, would mean the excess carrier would then have nothing left to defend (save perhaps litigating an appeal or defending an entirely different "suit" arising from the same occurrence). The plain terms of PEIC's policy provide that its duty to defend arises when "the limits of liability of the underlying insurance are exhausted *because of ... property damage*"—not when the limits are exhausted by payments of judgments or settlements of the underlying claim.

The language in *Island's* primary policy (Island "shall not be obligated ... to defend any suit after the applicable limit of [Island's] liability has been exhausted by payment of judgments or settlements") does not control PEIC's duties. Rather, the language addresses when Island's duties end and appears to state a common-sense proposition that if Island pays its limits by judgment or settlement—i.e., if the underlying action is gone—then Island's duties have ended. It might also refer to settlements, like the Island/Servco settlement, with the insured. In any event, the language does not address *PEIC's* duties, which are controlled by PEIC's policy.[6]

Cases such as *County of Santa Clara v. United States Fid. and Guar. Co.*, 868

---

**6.** PEIC's policy has similar language regarding when PEIC's duties end: "PEIC shall not be obligated to pay any claim or judgment or to defend any suit after PEIC's limit of liability has been exhausted by payment of judgments or settlements[.]"

F.Supp. 274, 277–78 (N.D.Cal.1994) (finding under California law in an environmental clean-up context that a primary insurer may not pay out its indemnity limits and thus extinguish its duty to defend—and thereby trigger excess insurance—until a remediation plan is approved) are primarily concerned with "premature" tendering of indemnity limits. "[T]he primary insurer cannot extinguish its defense obligation simply by tendering its indemnity limits to the insured and walking away from the fray—a tempting maneuver when it appears that defense costs will exceed indemnity limits." *Id.* at 277. "The fact that there is an excess insurer in the picture should not alter the obligation of the primary insurer who has a responsibility to the insured as well as the excess insurer." *Id.* (quoting Appleman, *Insurance Law and Practice*, § 4682 at 32–33).

Here, there is no genuine issue of material fact as to whether the Servco/Island settlement was such a premature tender. It was not. Rather, the settlement came well into the dispute (over three years after Servco's initial tender to Island and over four years after Servco asserts that it discovered the contamination). The settlement came after Servco had already incurred—and as required by state and federal environmental laws and the State Department of Health—*at least* $500,000 in remediation costs. [*See* Declaration of Carolyn Lam, at ¶ 28, and supporting documentation attached thereto (indicating that, prior to November 21, 2000, Servco had incurred approximately $896,369 of the approximately $1,028,253 in remediation and investigation costs relating to the underlying clean-up incurred as of August 12, 2002) ]. These costs include amounts for removal and disposal of contaminated concrete drip pads, surrounding soil, and an underground storage tank. These remediation costs are properly considered indemnification costs and not purely investigation or defense expenses. *See, e.g.,* Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 10.04[b] at 655 (11th ed.2002), and cases cited therein.[7] *See also Aetna Cas. and Sur. Co., Inc. v. Pintlar Corp.,* 948 F.2d 1507, 1513 (9th Cir.1991) (finding the term "damages" in insurance policies must logically include response or cleanup costs). Island paid out $1.5 million for a release of all present and future environmental liabilities, specifically including the Pukoloa Street properties at issue here (as well as two other named Servco locations). Nothing indicates the settlement was collusive or not a result of a good faith compromise, especially considering uncertainties surrounding possible policy defenses that Island could have asserted (e.g., a qualified pollution exclusion).

Importantly, Servco concedes that PEIC is entitled to a set off of $500,000, representing the limits of Island's indemnity coverage, for any indemnity recovery Servco would be entitled to under the PEIC policy. Similarly, Servco seeks defense costs only from the date of the settlement (November 21, 2000). Effectively, Servco would give PEIC a credit of all defense costs incurred before PEIC's excess duty to defend triggered. That is, PEIC—because the primary has been exhausted—is not prejudiced because if it must defend it would be doing only what it has contracted to do.

---

7. Regardless of whether the ultimate amount of indemnity costs are still open and continuing to mount, it is certain that the primary indemnity limits are exhausted, i.e., that Island has paid over $500,000 in amounts for "property damage." In any event, the real question for purposes of exhaustion is whether the $1.5 million settlement, when considering all its particulars, exhausted the primary indemnity limits. As set forth above, the answer is yes.

Therefore, Island is entitled to summary judgment. The November 21, 2001 settlement having exhausted the primary policy, PEIC would not be entitled to equitable subrogation from Island regardless of the outcome of the dispute between PEIC and Servco. Island's motion for summary judgment is GRANTED.

### 2. Does PEIC now have a duty to defend?

#### a. Does Servco face a "suit?"

■ PEIC's duty to defend also depends on whether Servco faces a "suit" within the meaning of PEIC's policy. PEIC's policy provides in pertinent part that PEIC has "the right and duty to defend *any suit* against [Servco] seeking damages on account of ... property damage" (emphasis added). PEIC argues that it has no duty to defend because the DOH proceeding is an administrative or regulatory action, not a "suit" in a court. (It does not argue that it has no duty to defend Servco against counterclaims in the *Servco Pacific, Inc. v. Damon Estate* PRP action, which is a "suit" in court.) PEIC relies primarily on California law—*Foster-Gardner, Inc. v. National Union Fire Ins. Co.*, 18 Cal.4th 857, 77 Cal.Rptr.2d 107, 959 P.2d 265 (1998) (holding that an environmental agency proceeding is not a "suit" for duty to defend purposes in a typical CGL policy)—and this Court's citation of *Foster–Gardner* in *CIM Ins. Co. v. Masamitsu*, 74 F.Supp.2d 975, 986 (D.Haw. 1999).

*Foster–Gardner*, however, appears to be a minority view; many jurisdictions go the other way. *See, e.g.*, Mark S. Dennison, Annotation, *What Constitutes "Suit" Triggering Insurer's Duty to Defend Environmental Claims—State Cases*, 48 A.L.R. 5th 355, 1997 WL 260180 (1997). Hawaii law is silent on this point. It is certainly possible that Hawaii's appellate courts would adopt the majority rule that the administrative process, including "PRP notices" against an insured in a CERCLA context, constitutes a "suit" for purposes of a duty to defend. *See Pintlar*, 948 F.2d at 1516–1518 (predicting Idaho law and describing rationale for holding that EPA administrative claims trigger duty to defend CERCLA action). This legal uncertainty alone might be enough to trigger a duty to defend under Hawaii law. *See Sentinel Ins. Co. v. First Ins. Co. of Hawai'i*, 76 Hawai'i 277, 875 P.2d 894, 904–07 (1994) (stating principle that a liability insurer owes a duty to defend upon the mere potential for coverage and finding such a defense duty where coverage depended upon a legal uncertainty in Hawaii law).

In any event, this Court is convinced that Hawaii courts would adopt the majority rule as followed in *Pintlar*, 948 F.2d at 1516–17. *See, e.g., Avondale Indus., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1206 (2d Cir.1989); *Texaco A/S (Denmark) v. Commercial Ins. Co. of Newark*, 160 F.3d 124, 129 (2d Cir.1998); *Briggs & Stratton Corp. v. Royal Globe Ins. Co.*, 64 F.Supp.2d 1340, 1345 (M.D.Ga.1999); *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 622 (Colo.1999); *Michigan Millers Mut. Ins. Co. v. Bronson Plating Co.*, 445 Mich. 558, 519 N.W.2d 864, 870 (1994); and many other cases. Servco has little choice but to comply with CERCLA and equivalent Hawaii law. The DOH proceeding against Servco compels that. Just because Servco appears to be cooperating with the DOH, and is not fighting the matter, does not mean that those regulatory proceedings are not a CERCLA-equivalent of a "suit." The Court applies *Pintlar* here and finds that the DOH proceeding is a "suit" within the meaning of PEIC's policy.

*CIM* does not apply. Although this Court did cite *Foster–Gardner* for the proposition that the insurer only owed a

duty to defend upon actual filing of a civil suit, the CGL policy in *CIM* specifically defined "suit" as a civil proceeding. 74 F.Supp.2d at 986. PEIC's policy does not define "suit." Moreover, *CIM* dealt only with a threat of litigation in an ordinary demand letter from opposing counsel in a contract dispute. It did not involve environmental agency administrative clean-up activities and the compulsion inherent in a CERCLA-type PRP notice. *See Pintlar,* 948 F.2d at 1517.

**b. The qualified pollution exclusion.**

■ Next, PEIC invokes a "qualified pollution exclusion" that was a standard in its policy until the mid–1980's. The exclusion, however, includes an exception for "sudden and accidental" pollution.[8] That is, if the pollution was "sudden and accidental," then it is covered. PEIC has a duty to defend a suit for property damages that was "sudden and accidental." PEIC contends that "sudden and accidental" unambiguously requires Servco to prove that the pollution at issue was released "abruptly" and "immediately" in a temporal sense. Because PEIC contends that Servco lacks such evidence, PEIC contends that it is entitled to summary judgment, i.e., that its exclusion entitles it to a declaration that it owes no coverage duties.

The meaning, however, of the qualified pollution exclusion is hardly settled. *See, e.g.,* Claudia G. Catalano, Annotation, *Construction of Qualified Pollution Exclusion Clause in Liability Insurance Policy,* 88 A.L.R.5th 493, 513 (2001) ("The proper interpretation of the phrase 'sudden and accidental' within the pollution exclusion

clause of the standard form comprehensive general liability policy has been the subject of enormous debate by courts and commentators alike."). *Compare, e.g., Shell Oil Co. v. Winterthur Swiss Ins. Co.,* 12 Cal.App.4th 715, 15 Cal.Rptr.2d 815, 840–41 (1993) (reasoning that "sudden" must have a temporal element), *and Smith v. Hughes Aircraft Co.,* 22 F.3d 1432, 1437–38 (9th Cir.1993) (finding no coverage for gradual pollution), *with Queen City Farms, Inc. v. Central National Ins. Co.,* 126 Wash.2d 50, 882 P.2d 703, 720–25 (1994) (reasoning that "sudden" can mean "unexpected" and interpreting "sudden and accidental" in favor of coverage as meaning "unexpected or unintended") *and Textron, Inc. v. Aetna Cas. and Sur. Co.,* 754 A.2d 742 (R.I.2000) (construing "sudden" to mean "unexpected" in pollution-exclusion clause after examining case law and drafting history of clause).

As noted by Servco, one theory mandating coverage is based upon "regulatory estoppel" under which insurers were held to representations made to insurance regulators when obtaining approval for pollution exclusions in standard insurance forms. *See, e.g., Morton Int'l, Inc. v. General Accident Ins. Co. of America,* 134 N.J. 1, 629 A.2d 831 (1993). The parties have not otherwise briefed whether such a theory should apply under Hawaii law.

Most important for present purposes, Hawaii has not addressed this issue in a published opinion. The meaning of "sudden and accidental" in a "qualified pollution exclusion" is an open issue in Hawaii law. Given such a legal ambiguity (and an

---

**8.** The exclusion provides:

This policy does not apply:

. . . .

(i) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other

irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.*

[Decl. of Kaili–Ho, Exh. 1 at A001815 (emphasis added)].

underlying factual dispute as applied here) regarding the meaning of such an exclusion, there is a potential for coverage under Hawaii law and PEIC is required to defend Servco. *See Sentinel*, 875 P.2d at 904–07 (finding such a defense duty where coverage depended upon a legal uncertainty in Hawaii law); *Dairy Road Partners v. Island Ins. Co.*, 92 Hawai'i 398, 992 P.2d 93, 107–08 (2000) (reasoning that policyholder need only demonstrate that claim might fall within potential for coverage, while insurer must show that it cannot).

Under *Sentinel*, PEIC has a duty to defend from the date of the Island/Servco settlement—both for the DOH proceedings and the PRP action—even though the Court also finds that it need not yet decide which of the competing interpretations of the qualified pollution exclusion apply under Hawaii law. In this regard, the Court agrees with Servco that it is premature to decide questions of indemnity (as compared to questions of a duty to defend). That is, it is premature to decide which (if any) "damages" PEIC is legally obligated to pay under its policy. The underlying proceedings are ongoing and the remediation costs are yet to be fully determined. Further, PEIC has challenged, via an expert, the nature of the remediation costs expended to date (contending that some of the costs are "investigative" and not "damages" for purposes of indemnity). This raises a factual dispute regarding the nature of some of the as-yet-to-be-determined costs. The answers to such questions should await the conclusion of the underlying proceedings or, perhaps, at least until a trial of this factual issue.[9]

The Court notes that PEIC has waived the "no action" clause in its contract [10] by deciding not to defend Servco. *See* Thomas G. Fischer, Annotation, *Liability Insurer's Postloss Conduct as Waiver of, or Estoppel to Assert, "No–Action" Clause*, 68 A.L.R.4th 389, 400–04, 1989 WL 571756 (1989).

Therefore, Servco's motion is GRANTED. PEIC owes a defense. PEIC's motion is DENIED in part without prejudice. Questions regarding indemnity remain for later proceedings.

### 3. Can PEIC be liable for bad faith and punitive damages?

■ Lastly, PEIC raises the "genuine dispute" doctrine and argues that, given the legitimate dispute regarding coverage, it cannot be liable for bad faith and punitive damages. *See, e.g., Guebara*, 237 F.3d at 992 (outlining genuine dispute doctrine).

Although the Court agrees with PEIC that there was a "genuine dispute" as to coverage (and in fact there remains a genuine dispute regarding the meaning of the qualified pollution exclusion for indemnity purposes), the Court finds that it is premature to absolve PEIC of all possible liability for bad faith at this stage of the proceedings. Servco's theory of bad faith focuses on claims-handling aspects of PEIC's denial (as counsel stated at oral argument, "how this was done, not what was done") and whether the denial of a

---

**9.** Again, any factual dispute regarding the nature of the costs does not mean PEIC has no duty to defend. Under basic duty-to-defend principles, there is at least the potential for coverage such that PEIC has a duty to defend. And the finding as a matter of law regarding exhaustion was based primarily on the $1.5 million settlement, not merely on the amount of costs expended by Servco to date.

**10.** "No action shall lie against PEIC unless, as a condition precedent thereto, there shall have been full compliance with all terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and PEIC[.]"

defense, including possible delay in handling matters, was "unreasonable." *See Best Place, Inc., v. Penn America Ins. Co.,* 82 Hawai'i 120, 920 P.2d, 334, 347 (1996). Servco questions whether it was reasonable for PEIC to deny a defense duty (as opposed to an indemnity duty) under the issues discussed in this order. That is, Servco questions whether there was in fact a "genuine dispute" as to a duty to defend.

Most importantly for present purposes, the parties stipulated relatively early in this case to, among other things, limit discovery to coverage issues. *See* Stipulation Regarding First Phase of Discovery and Order, at 2 (Aug. 15, 2001). The parties have apparently not focused discovery on potential bad faith aspects of PEIC's handling of the claim. It is premature to grant summary judgment as to bad faith. The Court therefore DENIES PEIC's motion regarding bad faith and punitive damages without prejudice. PEIC may renew such a motion after an appropriate period of discovery.

### CONCLUSION

For the foregoing reasons, Island's [docket no. 66–1] and Servco's [69–1] motions are GRANTED. The Court finds that Island's primary policy was exhausted and therefore Island is entitled to summary judgment. The Court also finds that PEIC has a duty to defend Servco for the underlying actions. PEIC's motions [60–1, 61–1] are DENIED. The Court reserves for later proceedings questions regarding indemnity, as well as bad faith or punitive damages.

IT IS SO ORDERED.