## LAKESIDE NON–FERROUS METALS, INC., Plaintiff–Appellant,

v.

## HANOVER INSURANCE COMPANY; New Hampshire Insurance Company; Scottsdale Insurance Company, Defendants–Appellees.

No. 97–17034.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 1999.

Decided April 5, 1999.

Andrew Cohn, Berkeley, California, for the plaintiff-appellant.

Ashley M. Bale, Larson • King LLP, San Francisco, California, for the defendants-appellees.

Before: FLETCHER and TASHIMA, Circuit Judges; FITZGERALD,[1] District Judge.

FLETCHER, Circuit Judge:

Plaintiff-appellant Lakeside Non–Ferrous Metals, Inc. ("Lakeside") appeals the district court's order dismissing its claim seeking insurance coverage for its pollution of the Port of Oakland's land along the Oakland estuary. Lakeside leases the land from the Port for metal recycling, battery salvage, and chemical storage. After the Port of Oakland sued Lakeside and other tenants for contaminating the Port's land and surrounding waters, Lakeside filed an action to compel its insurers to defend the claim.[2] The insurers refused coverage, claiming that the "pollution exclusion" contained in Lakeside's insurance policy excluded coverage for property damage arising out of actual or threatened discharge of pollutants. The district court, applying California law in this diversity action, dismissed the case for failure to state a claim. Lakeside timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

---

1. The Honorable James M. Fitzgerald, United States Senior District Judge, District of Alaska, sitting by designation.

2. The only remaining defendant is Scottsdale Insurance Company. Hanover Insurance Company, an original defendant, settled its dispute with Lakeside and the parties stipulated to dismiss Hanover from the appeal. Coverage for the nuisance and trespass claims is at issue.

█ We review de novo the district court's dismissal for failure to state a claim upon which relief can be granted. *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295 (9th Cir.1998). A dismissal for failure to state a claim is appropriate where it appears, beyond a doubt, that the plaintiff can prove no set of facts that would entitle it to relief. *Johnson v. Knowles,* 113 F.3d 1114, 1117 (9th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 559, 139 L.Ed.2d 401 (1997); Fed.R.Civ.P. 12(b)(6). We also review de novo whether the contract is ambiguous. *Titan v. Aetna Casualty and Surety Co.,* 22 Cal.App.4th 457, 469, 27 Cal.Rptr.2d 476 (1994). "Whether a clause is ambiguous and whether an insured has an objectively reasonable expectation of coverage in light of the insuring language are questions of law." *Id.* California law governs our review of this case. *See Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1556 (9th Cir.1991).

█ Lakeside contends that Scottsdale is obligated to defend against the Port's nuisance and trespass claims. We look to the underlying complaint and the terms of the insured's coverage to determine the insurer's obligation to defend. *Legarra v. Federated Mut. Ins. Co.,* 35 Cal.App.4th 1472, 1479, 42 Cal.Rptr.2d 101 (1995). Under California law, a liability insurer owes a broad duty to defend its insured, and that duty is broader than its duty to indemnify. *Staefa Control–System, Inc. v. St. Paul Fire & Marine Ins. Co.,* 847 F.Supp. 1460, 1466 (N.D.Cal.1994); *Martin Marietta Corp. v. Insurance Co. of North America,* 40 Cal.App.4th 1113, 1122, 47 Cal.Rptr.2d 670 (1995) ("We generally interpret the coverage clauses of insurance policies broadly."). To prevail, the insured must prove that the underlying claim may fall within the policy coverage, whereas the insurer must prove that the underlying claim cannot fall within policy coverage. *Legarra,* 35 Cal.App.4th at 1479, 42 Cal.

Rptr.2d 101. An insurer's obligation to defend, therefore, can be excused only when the underlying complaint "can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Montrose Chem. Corp. v. Superior Court,* 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993) (internal citations omitted).

Lakeside had a Comprehensive General Liability policy with Scottsdale Insurance Company. The policy covered "Bodily Injury or Property Damage" as well as "Personal Injury and Advertising Injury." The policy defines "Property Damage" as

(1) physical injury to or destruction of tangible property which occurs during the policy period, *including the loss of use* thereof at any time resulting therefrom, or (2) *loss of use* of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

(emphasis added).

Lakeside's insurance policy also contained a "pollution exclusion" that excluded claims

(1) to bodily injury or *property damage* arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants: [3]

    (a) at or from premises owned, rented or occupied by the named insured;

    (b) at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste.

(emphasis added).

Lakeside's Personal Injury coverage is also defined in the policy. The Personal Injury coverage applies to "damages because of personal injury ... to which this insurance applies, sustained by any person or organization and arising out of the con-

---

3. The term "pollutants" means "any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste ... includ[ing] materials to be recycled, reconditioned or reclaimed."

duct of the named insured's business." "Personal injury" means "injury arising out of . . . wrongful entry or eviction or other invasion of the right of private occupancy."

Lakeside insists that the Port's underlying claims are common law trespass and nuisance claims that fall within the personal injury coverage provision rather than the property damage provision. As personal injury claims, Lakeside argues, they are not barred by the pollution exclusion. The theory is attractive because "once the duty to defend attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered. . . ." *East Quincy Services Dist. v. Continental Ins. Co.,* 864 F.Supp. 976, 981 (E.D.Cal.1994) (internal citations omitted) (construing California law).

We must interpret an insurance policy "as a whole, in a manner which gives force and effect to every clause." *Martin Marietta,* 40 Cal.App.4th at 1122, 47 Cal.Rptr.2d 670. Lakeside is not the first insured to seek refuge in the personal injury provision of an insurance policy to evade the harsh reach of the pollution exclusion. Even though "[a]ny doubt as to whether the facts give rise to a duty to defend is resolved in favor of the insured," *Legarra,* 35 Cal.App.4th at 1479, 42 Cal. Rptr.2d 101, our review of California law reveals that California courts refuse to write a pollution exclusion out of an insurance policy by recasting a property damage claim as a personal injury claim unburdened by a pollution exclusion clause. "As several courts have now held, . . . it is hardly a fair reading of the policy to permit property and environmental claims, under the guise of 'personal injury,' where the pollution exclusion clearly protects the

insurer from precisely such claims." *East Quincy,* 864 F.Supp. at 981.

In *Legarra,* the court held that the personal injury endorsement, which covered "wrongful entry or eviction or other invasion of the right of private occupancy," did not encompass a groundwater contamination claim because such an interpretation would nullify the pollution exclusion. 35 Cal.App.4th at 1485–86, 42 Cal.Rptr.2d 101. The court recognized that even if a "wrongful entry or . . . other invasion of the right of private occupancy *in the abstract* might apply to pollution damage, *read in the context of the entire policy* it [was] unreasonable [for the insured] to expect such coverage. . . ." *Id.* at 1485, 42 Cal.Rptr.2d 101 (emphasis added).

In *Titan,* an indemnity case, the insured's policy contained a personal injury provision and pollution exclusion identical to those in Lakeside's policy from Scottsdale. The court concluded that groundwater contamination was injury to property, not personal injury, and was excluded under the pollution exclusion. It was not "objectively reasonable for an insured to expect 'personal injury' to mean 'property damage' . . . or to expect that a blanket pollution exclusion will never operate." *Titan,* 22 Cal.App.4th at 476, 27 Cal. Rptr.2d 476.[4]

Here, too, we must look at Lakeside's entire policy in context and at Lakeside's objectively reasonable expectations as to coverage. See *Legarra,* 35 Cal.App.4th at 1485–86, 42 Cal.Rptr.2d 101. The policy unambiguously proclaims that it does not cover property damage claims that are caused by pollution. See e.g., *Titan,* 22 Cal.App.4th at 474, 27 Cal.Rptr.2d 476. We may not create ambiguity in language where none exists. The nuisance and trespass claims in the Port's underlying complaint are rooted in pollution-based proper-

4. We recognize that *Martin Marietta* later disagreed that an insured could not reasonably expect the "personal injury" provisions to apply to acts amounting to trespass and nuisance. *See Martin Marietta,* 40 Cal.App.4th at 1127, 47 Cal.Rptr.2d 670. However, that case did not involve an insured's reasonable expectations in light of a pollution exclusion. *Id.* at 1128, 47 Cal.Rptr.2d 670.

ty damage, and property damage caused by pollution is expressly excluded from coverage by the pollution exclusion. Allowing Lakeside to recast its claim under the personal injury provision would "render[ ] the pollution exclusion a dead appendage to the policy." *See Titan,* 22 Cal.App.4th at 474, 27 Cal.Rptr.2d 476.

Lakeside points to *Martin Marietta,* the most recent California case that interprets the scope of personal injury coverage in a pollution case, for the proposition that nuisance and trespass claims raise a potential for coverage under the "wrongful entry" and "other invasion" components of the personal injury provision and trigger the insurer's duty to defend. *Martin Marietta,* 40 Cal.App.4th at 1131–32, 47 Cal.Rptr.2d 670. *Martin Marietta* is inapposite. The policy in *Martin Marietta,* though similar to Lakeside's in its personal injury provision, did not contain a pollution exclusion. The court expressly distanced its analysis and conclusions from those cases involving a policy with a pollution exclusion. *Martin Marietta,* 40 Cal.App.4th at 1125–28, 47 Cal.Rptr.2d 670 ("since [the] policy has no pollution exclusion, the personal injury provision must be read 'in isolation.' ").

We need not decide whether the nuisance and trespass claims filed against Lakeside would trigger Scottsdale's duty to defend in the absence of a pollution exclusion, as the policy unambiguously contains a pollution exclusion. *Martin Marietta,* therefore, affords no guidance. "An insurer may select the risks it will insure and those it will not, and a clear exclusion will be respected." *Legarra,* 35 Cal.App.4th at 1480, 42 Cal.Rptr.2d 101; *accord Titan,* 22 Cal.App.4th at 469, 27 Cal.Rptr.2d 476 ("An insurer is entitled to limit its coverage to defined risks, and if it does so in clear language, we will not impose coverage where none was intended."). Here, Scottsdale included a clear exclusion in its policy for Lakeside. We must respect it.

Our conclusion is strengthened by the policy's definition of "property damage," which includes "loss of use." In the underlying complaint, the Port claimed that Lakeside's contamination interfered with its ability to "use, develop, sell, let or encumber" its property and diminished its "use and enjoyment" of the property. These "loss of use" claims fit squarely within the definition of "property damage" and are excluded from coverage via the pollution exclusion. *See Staefa Control–System, Inc. v. St. Paul Fire Marine Ins. Co.,* 875 F.Supp. 656, 658–59 (N.D.Cal. 1994) (when nuisance or trespass claims are raised in the underlying action, the presence of "loss of use" language in the policy definition of "property damage" excludes those claims from coverage).[5] *See also East Quincy,* 864 F.Supp. at 982 (an insurer has a duty to defend against only those personal injury claims that are distinct from property damage claims subject to the pollution exclusion).

Lakeside also seeks shelter in a footnote in *East Quincy,* 864 F.Supp. at 982, n. 12, to argue that "[t]he *Titan* court left open the possibility of an action for damages for the disturbance of quiet enjoyment." Unfortunately for Lakeside, the next sentence of that footnote concludes that "such damages [for the disturbance of quiet enjoyment] are expressly included in the definition of property damage." As part of the definition of "property damage" they are excluded from coverage by the pollution exclusion.

AFFIRMED.

---

5. In this amended opinion, the court backed away from its initial contention that "property damage" was inherently ambiguous and must be construed against the insurer. *Stae-* *fa,* 875 F.Supp. at 658. The initial decision, 847 F.Supp. 1460, neglected to discuss the policy definition of "property damage."