# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2491

_____

Royal Insurance Company of America;   *
American Employers' Insurance          *
Company,                                    *
                                        *
     Plaintiffs - Appellees,      *   Appeal from the United States
                                        *   District Court for the Eastern
Kirksville College of Osteopathic   *   District of Missouri.
Medicine,                              *
                                        *
     Defendant - Appellant.      *

_____

Submitted: April 21, 1999

Filed: September 15, 1999

_____

Before McMILLIAN, LOKEN, and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Kirksville College of Osteopathic Medicine ("KCOM") punctured an underground storage tank while allegedly trespassing on a neighbor's property. Pollutants escaped from the tank, and the neighbor sued KCOM to recover its clean-up costs. KCOM tendered defense of the suit to its liability insurers, Royal Insurance Company of America ("Royal") and American Employers' Insurance Company ("American"), who commenced this action seeking a declaratory judgment they have no duty to defend or indemnify KCOM because of the absolute pollution exclusion in

their comprehensive general liability ("CGL") policies. The district court granted summary judgment for the insurers. KCOM appeals, arguing that its potential liability is covered by both the property damage and the personal injury provisions of the policies. We conclude the personal injury coverage in the policies triggers the insurers' duty to defend the neighbor's trespass claim. Therefore, we reverse and remand.

In reviewing the grant of summary judgment, we view the facts most favorably to the non-moving party, KCOM. In August 1994, KCOM entered into a contract to purchase property adjoining its facilities in Kirksville, Missouri, from Lewistown Heet Gas, Inc. ("Heet"). Intending to build a parking lot, KCOM directed a contractor to enter the property in April 1995, before completing the purchase and allegedly without Heet's permission. While grading the property and laying curbs, the contractor ruptured an underground storage tank containing wastes from a coal gasification plant that was operated on the site from 1905 to 1944. Heet sued KCOM for damages in a Missouri state court, alleging that KCOM's negligence and trespass caused Heet to spend over $400,000 in "site assessment and remediation expenses." KCOM tendered the defense of Heet's lawsuit to Royal and American. The insurers agreed to defend under a reservation of rights and then commenced this action in federal court, seeking a declaration that they have no duty to defend or indemnify KCOM under their respective CGL policies.

The CGL policies provide coverage for damages KCOM is liable to pay to third parties for causing "property damage," which is part of "Coverage A," or "personal injury," which is "Coverage B." Under Missouri law, which applies in this diversity action, an insurer's duty to defend is broader than its duty to indemnify. If Heet's complaint "alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." McCormack Baron Mgmt. Servs., Inc. v. American Guar. & Liab. Ins. Co., 989 S.W.2d 168, 170-71 (Mo. banc 1999). The district court concluded that the pollution exclusion in Coverage A of both policies unambiguously excludes property damage caused by the release of pollutants, and that

the exclusion also defeats KCOM's claim for coverage under Coverage B. We review the district court's grant of summary judgment and its interpretation of state law *de novo*. See <u>Salve Regina College v. Russell</u>, 499 U.S. 225, 231 (1991); <u>Newyear v. Church Ins. Co.</u>, 155 F.3d 1041, 1043 (8th Cir. 1998).

## I.  Coverage A Issues

Coverage A of the Royal and American policies indemnifies KCOM for "sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." The policies define "property damage" as "physical injury to tangible property, including all resulting loss of use of that property." Coverage A also contains an "absolute" pollution exclusion. Royal's exclusion provides in relevant part:

> This insurance does not apply to . . . .
>
> f.      Pollution
>
> (1)     "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants . . .
>
> (b)  At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;
>
> *      *      *      *      *
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

American's pollution exclusion provides in relevant part:

> This insurance does not apply to:
>
> f.    (1) "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

KCOM concedes that Heet's negligence claim is for "property damage" arising from the release of pollutants from the underground tank. The district court concluded that both exclusions unambiguously preclude coverage under Coverage A. We agree.

**The Royal Exclusion.** KCOM argues that Royal's exclusion does not apply because the Heet property was not "used . . . for the handling, storage, disposal, processing or treatment of waste." The term "used" must be construed in favor of the insured to mean "primarily used," KCOM explains, and the coal gasification plant only incidentally produced the wastes that were released from the punctured storage tank. This argument is without merit, totally at odds with the plain language of the exclusion. The coal gasification plant handled, stored, and disposed of the wastes it generated, even if its operations ceased before environmental protection laws required the processing or treatment of such contaminants. In support of its absurd construction of the exclusion, KCOM cites only S.N. Golden Estates, Inc. v. Continental Cas. Co., 680 A.2d 1114, 1118 (N.J. Super. 1996). But that court did not apply a "primary use" analysis. It held that the pollution exclusion did not exclude liability claims against a real estate developer accused of installing defective home septic systems because "the construction of a home that includes a septic system is not the kind of activity to which the 'Absolute Pollution' exclusion applies." Under Missouri law, "the courts are not authorized to . . . exercise inventive powers for the purpose of creating an ambiguity when none exists." State Farm Mut. Auto. Ins. Co. v. Ward, 340 S.W.2d 635, 639

(Mo. 1960); accord Harrison v. MFA Mut. Ins. Co., 607 S.W.2d 137, 142 (Mo. banc 1980). Royal's exclusion applies to KCOM's claim for coverage under Coverage A.

**The American Exclusion.** KCOM argues that American's pollution exclusion does not apply because the term "but for" has two reasonable meanings under Missouri law, "the cause" and "a cause." Applying the meaning favorable to the insured in this case, the single, originating cause of Heet's damages was the wrongful entry by KCOM and its contractor onto the property, not the subsequent release of pollutants. Again, this contention is contrary to the plain meaning of the policy language. Under Missouri law, but for "is an absolute minimum for causation because it is merely causation in fact." Callahan v. Cardinal Glennon Hosp., 863 S.W.2d 852, 862 (Mo. banc 1993). Heet's alleged property damage was the cost of remedying the release of pollutants onto its property. This property damage clearly would not have occurred "in whole or in part but for" the release of the pollutants. The exclusion applies.

## II. Coverage B Issues

Coverage B of both policies obligates the insurers to pay "sums that the insured becomes legally obligated to pay as damages because of 'personal injury' . . . to which this insurance applies." Personal injury is defined as "injury, other than 'bodily injury,' arising out of one or more of the following offenses:

"a.    False arrest, detention or imprisonment;

"b.    Malicious prosecution;

"c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

"d.    [Slander or libel;]

"e.    . . . publication of material that violates a person's right of privacy."

Heet's complaint accused KCOM and its contractor of "trespass or an unauthorized invasion of [Heet's] interest in the exclusive possession of its property," intentional misconduct that caused Heet to incur site assessment and remediation expenses in excess of $400,000.00.  KCOM contends that the insurers' duty to defend is triggered by this damage claim because it falls within the "wrongful entry" and "invasion of the right of private occupancy" provisions in subpart c. of the definition of personal injury under Coverage B.  This is a difficult issue.  The plain language of subpart c. certainly seems to encompass liability KCOM incurs for entering Heet's premises and causing injury. The insurers nonetheless argue that this liability is not covered under Coverage B for three distinct reasons.

1.  The insurers first argue that, to give effect to their policies as a whole, the pollution exclusions located in Coverage A must be read as excluding coverage of Heet's trespass claim under Coverage B.  Though there is no reported Missouri decision on point, many recent cases from other jurisdictions have addressed this contention.  A majority have held that an insured may not recast a claim for property damage that is excluded under Coverage A as a claim for personal injury under Coverage B so as to circumvent an applicable pollution exclusion.  Compare Lakeside Non-Ferrous Metals, Inc. v. Hanover Ins. Co., 172 F.3d 702, 705-06 (9th Cir. 1999), City of Delray Beach v. Agricultural Ins. Co., 85 F.3d 1527 (11th Cir. 1996), and Harrow Prods., Inc. v. Liberty Mut. Ins. Co., 64 F.3d 1015, 1024 (6th Cir. 1995), with Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037, 1042 (7th Cir. 1992), and Titan Holdings Synd., Inc. v. City of Keene, 898 F.2d 265 (1st Cir. 1990).  The district court adopted "the majority approach."

However, these cases have a factor that is missing here -- they all involved what might be called trespass-by-pollution, that is, the release or discharge of pollutants from

an insured's property that caused property damage elsewhere. Though tort law may characterize the discharge of pollutants onto a neighbor's property as a trespass, liability for this type of conduct falls more logically under Coverage A, where it is expressly excluded. Thus, we agree with decisions holding such a discharge is not the "offense" of wrongful entry or invasion encompassed by subpart c. of the definition of personal injury under Coverage B. But to conclude that such claims do not fall within the scope of Coverage B is not the same as incorporating the pollution exclusion in Coverage A into Coverage B. That incorporation is contrary to the plain language of the policy. Moreover, it is apparent from prior cases that some insurers draft their pollution exclusions to apply expressly to Coverage B as well as Coverage A. See Pipefitters, 976 F.2d at 1042. Accordingly, we reject the insurers' contention that their Coverage A pollution exclusions apply to Coverage B. Therefore, KCOM's claim for coverage under Coverage B is not barred by the pollution exclusions in the Royal and American CGL policies.

2. The insurers also argue that, even if KCOM's alleged trespass was a wrongful entry or invasion of Heet's property, it is not covered because under subpart c. the trespass must be committed "by or on behalf of [the property's] owner, landlord or lessor," which in this case was Heet, not KCOM or its contractor. KCOM responds that the words "by or on behalf of" in subpart c. modify "occupies," not the more distant antecedents, "wrongful entry" and "invasion." The "by or on behalf of" clause is apparently a recent addition to the widely-used form of Coverage B.[1] The insurers note that a number of courts have agreed with their interpretation; indeed, our court has observed that KCOM's interpretation is doubtful. See TGA Dev., Inc. v. Northern Ins.

---

[1]For example, the policies at issue in Liberty Mut. Ins. Co. v. FAG Bearings Corp, 153 F.3d 919, 921 (8th Cir. 1998), and in Great Northern Nekoosa Corp. v. Aetna Cas. & Sur. Co., 921 F. Supp. 401, 405 (N.D. Miss. 1996), defined personal injury to include "injury arising out of . . . (2) wrongful entry or eviction or other invasion of the right of private occupancy."

Co. of New York, 62 F.3d 1089, 1091 (8th Cir. 1995). But in the recent case of New Castle County v. National Union Fire Ins. Co. of Pittsburgh, 174 F.3d 338, 344-51 (3d Cir. 1999), the court exhaustively reviewed the policy language and these authorities and concluded that both interpretations are reasonable, so the term is ambiguous and must be construed against the insurer under Delaware law. Missouri law, too, construes an ambiguous insurance policy against the insurer. See Martin v. United States Fid. & Guar. Co., 1999 WL 432609, at *2 (Mo. banc June 29, 1999). We conclude that the Supreme Court of Missouri would follow New Castle County and hold that wrongful entry or invasion by a non-owner is included in subpart c. of the definition of "personal injury" in Coverage B of the Royal and American policies.

3. Finally, the insurers argue that the personal injury coverage they provided under Coverage B does not extend to Heet's claims for property damage. This contention has surface appeal, because the law often distinguishes between injuries to persons and damage to property. But Coverage B in these insurance policies defines personal injury to include "injury, other than 'bodily injury,' arising out of" five types of specified "offenses." Four of those offense categories -- false arrest, malicious prosecution, slander and libel, and invasion of privacy -- rarely if ever result in property damage. But the offenses in subpart c. -- wrongful eviction, wrongful entry, and invasion of the right of occupancy -- often result in injuries to persons *and* damage to property, and the law of trespass has long allowed a trespass victim to recover both types of damages. See, e.g., 75 AM. JUR. 2D *Trespass* § 126 (1991). Thus, an insurer that contractually provides coverage for this type of intentional offense should anticipate that the "injury" being covered would include claims for property damage. And in fact, prior cases have held such property damage claims to be covered. See Western Cas. & Sur. Co. v. International Spas of Ariz., Inc., 634 P.2d 3 (Ariz. App. 1981); Cincinnati Ins. Co. v. Davis, 265 S.E.2d 102 (Ga. App. 1980).

Even if some property damage is covered under subpart c. of the definition of personal injury in Coverage B, there remains the question whether that coverage

extends to property damage that is expressly excluded under Coverage A. Under California law as construed by the Ninth Circuit, the answer is clearly no. See Lakeside, 172 F.3d at 705-06. However, we have construed Missouri law to the contrary. In Hartford Acc. & Indemn. v. Krekeler, 491 F.2d 884 (8th Cir. 1974), the insured went to the home of a slow-paying customer, got in a fight, and was sued for trespass and battery. The district court held the insurer had no duty to defend under the personal injury policy provisions because the alleged injuries were caused by the battery, not the trespass. We reversed. Because a trespasser is generally liable for physical harm to the possessor of land at the time of the trespass, and because the battery immediately followed the trespass, we concluded that the insurer had a duty to defend -- the third party's claim was *potentially* within the policy's coverage.

We note that the harm inflicted in Krekeler -- bodily injury -- is generally covered by Coverage A, but intentional acts such as battery are typically excluded under Coverage A. Likewise, the harm inflicted here -- property damage -- is generally covered by Coverage A, but property damage caused by the release of pollutants is expressly excluded. The parallel is obvious, and so Krekeler is controlling. We further note that Coverage B in the Royal and American policies expressly defines "personal injury" to exclude "bodily injury." That eliminates the potential trespass coverage at issue in Krekeler. But the insurers did not choose to extend their pollution exclusions to Coverage B. Construing the duty to defend broadly, as we must under Missouri law, and without deciding whether the insurers have a duty to indemnify because that question is premature on this record, we conclude that the insurers must defend Heet's trespass claim under Coverage B of their CGL policies.[2]

_____

[2]The dissent suggests that our interpretation of Coverage B "would effectively negate the pollution exclusion." We disagree. As we have explained, virtually every pollution exclusion case that has denied a duty to defend under Coverage B involved a release of the insured's pollutants which then caused damage or injury, usually to a neighbor's property. To reiterate, we agree with those decisions. By contrast, this case involves an insured who allegedly trespassed on a neighbor's property and caused

The judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion. KCOM's motion for leave to file a supplemental appendix is denied.

McMILLIAN, Circuit Judge, concurring in part and dissenting in part.

I concur in Part I because I agree that the insurers have no duty to defend KCOM against Heet's negligence claim for "property damage" caused by the release of pollutants when KCOM's contractor ruptured the underground storage tank. The pollution exclusion unambiguously precludes coverage under Coverage A.

However, I dissent from Part II because I do not agree that the insurers have a duty to defend KCOM against Heet's trespass claim for "personal injury" caused by the same conduct. I agree with the district court's analysis, and with the majority of the jurisdictions that have considered the issue, and would refuse to allow the insured to "recast a claim for property damage that is excluded under Coverage A as a claim for personal injury under Coverage B so as to circumvent an applicable pollution exclusion." Slip op. at 6. For this reason, I would hold that the pollution exclusion bars coverage under Coverage B as well and affirm the judgment of the district court.

The language of the pollution exclusion is unambiguous. Even though the pollution exclusion does not expressly apply to Coverage B, these policies, when read as a whole, clearly exclude coverage for property damage caused by pollution. An ordinary person of average understanding, if purchasing insurance, could not have

_____

damage or injury by inadvertently releasing the neighbor's pollutants. (Note in this regard that Coverage B expressly excludes an insured's "willful violation of a penal statute or ordinance.") This is a narrow class of cases, one that is sufficiently within the apparent scope of the trespass clause of Coverage B, and outside the apparent scope of the Coverage A pollution exclusion, so as to trigger the duty to defend.

reasonably expected coverage for a property damage claim which is clearly excluded under the pollution exclusion simply by recharacterizing it as "a personal injury claim unburdened by a pollution exclusion clause." Lakeside Non-Ferrous Metals, Inc. v. Hanover Insurance Co., 172 F.3d 702, 705 (9th Cir. 1999). Policy language should be interpreted to give effect to every part if possible. KCOM's interpretation would effectively negate the pollution exclusion. "[I]t is hardly a fair reading of the policy to permit property and environmental claims, under the guise of 'personal injury,' where the pollution exclusion clearly protects the insurer from precisely such claims." East Quincy Services District v. Continental Insurance Co., 864 F. Supp. 976, 981 (E.D. Cal. 1994).

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.