William Brian ALLEN; Hollis Barnett; Theodore Brown; Elbio Calace; Dori Conroy; James E. Fackrell; Jonathan M. Faulk; Mark Holland; Sam Holland; Gilbert Jacoby; Richard Krinke; Keith Lawyer; John D. McCormick; James Proctor Jr., Al Saunders, Plaintiffs,

v.

SCOTTSDALE INSURANCE COMPANY; Doe Defendants 1–30, Defendants.

No. CV 03–00233 DAE–KSC.

United States District Court, D. Hawai'i.

March 2, 2004.

Richard Turbin, Rai Saint Chu, Carl D. Soto, Law Office of Richard Turbin, Honolulu, HI, for William Brian Allen, Hollis Barnett, Theodore Brown, Elbio Calace, Dori Conroy, James E. Fackrell, Jonathan M. Faulk, Mark Holland, Sam Holland, Gilbert Jacoby, Richard Krinke, Keith Lawyer, John D. McCormick, James Proctor, Jr., Al Saunders, plaintiffs.

Sidney K. Ayabe, Jeffrey H.K. Sia, Ayabe Chong Nishimoto Sia & Nakamura, Honolulu, HI, Alan Yuter, Thomas A. Burgos, III, Selman & Breitman, Los Angeles, CA, for Scottsdale Insurance Company, Doe Defendants 1—30, defendants.

*ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT*

DAVID ALAN EZRA, Chief Judge.

The court heard the Motions on February 23, 2004. Richard Turbin, Esq., appeared at the hearing on behalf of Plaintiffs; Jeffrey H.K. Sia, Esq., and Alan B. Yuter, Esq., appeared at the hearing on behalf of Defendant Scottsdale Insurance.

After reviewing the Motions and the supporting and opposing memoranda, the court DENIES Plaintiffs' Motion for Partial Summary Judgment. The court GRANTS Defendant's Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment.

*BACKGROUND*

A. *FACTUAL BACKGROUND*

Plaintiffs William Brian Allen, Hollis Barnett, Theodore Brown, Elbio Calace, Dori Conroy, James F. Fackrell, Jonathan M. Faulk, Mark Holland, Gilbert Jacoby, Richard Krinke, Keith Lawyer, John McCormack, James Proctor, Jr., and Al Saunders ("Plaintiffs") are owners of individual boats, which they moored at the La Mariana at Sand Island. Resource Recovery, Inc. ("Resource") operates a concrete recycling plant at Pier 60 Sand Island Access Road, approximately sixty to sixty-five yards from the La Mariana.

Plaintiffs assert that at this recycling plant, Resource crushes up to 1300 tons of concrete, asphalt, and refuse a day, and it dumps this material onto the ground in an open area. Plaintiffs claim that this open area does not have a roof structure, and the screening around the open area has tears and holes in it so that dust particles freely escape. Plaintiffs maintain that soon after Resource began its operations in 1998, Plaintiffs began experiencing allergic reactions and other physical and emotional injuries due to the emanation of the dust particles. They also assert that the dust particles caused extensive damage to their boats.

Plaintiffs collectively sued Resource and its owner, Steven Swift, ("Swift") in December of 1999. Plaintiffs amended their Complaint in November 2000 to add the State of Hawai'i as a defendant. On January 20, 2000, Resource tendered its de-

fense to Defendant Scottsdale Insurance Company ("Defendant"). From June 18, 1998 to June 18, 2000, Scottsdale provided insurance coverage for Resource under two Comprehensive General Liability policies. Policy No. CLS0539831 ("Policy One") covered Resource for the period of June 18, 1998 to June 18, 1999. Policy No. CLS0578424 ("Policy Two") covered Resource for the period of June 18, 1999 to June 18, 2000.[1]

Plaintiffs maintain that these policies covered "bodily injury" and "property damage", and the definition of "insured" under the policy included "executive officers" like Swift. The parties agree that the policies excluded coverage for "pollution." Scottsdale states that after receiving Resource's claim, it determined that its policies did not cover the dispute between Plaintiffs and Resource because of the pollution exclusion provision, as well as other policy provisions, and consequently, Scottsdale, denied Resource coverage under the policy. Scottsdale asserts that provisions of the policy preclude it from having any duty to defend Resource or indemnify Swift, and consequently it refused to provide a defense for Resource or indemnity for Swift in the lawsuit.

According to Scottsdale, it is undisputed that Resource has violated Hawaii's pollution laws numerous times. In fact, Defendant asserts that on both August 12, 1998 and August 19, 1998, an Inspector from Hawaii's Department of Health, Clean Air Branch, Ronald Ho ("Inspector Ho"), observed "fugitive dust" emanating from Resource's facility. Defendant claims that Hawai'i pollution laws consider "fugitive dust" to be a "regulated air pollutant." Defendant states that Inspector Ho issued an informal Notice of Violation ("NOV") letter to Resource on August 25, 1998, and

he conducted two follow-up visits to the plant on September 21, 1998 and September 23, 1998, where he again observed "fugitive dust" crossing the plant's property boundaries.

Defendant states that Resource received another NOV letter from Inspector Ho on November 30, 1998. Defendant claims that Inspector Ho returned to the plant site on December 8, 1998 and again observed "fugitive dust" emanating from the plant's boundaries. As a result, Defendant maintains that Inspector Ho issued a formal Notice of Finding of Violation against Resource with regard to emissions of "fugitive·dust."

Moreover, Defendant states that on February 1, 2000, before Plaintiffs could have known of Defendant's decision to deny Resource's claim for coverage, Plaintiffs' attorney, Richard Turbin, sent a letter to Defendant. Defendant states that in this letter "Mr. Turbin admitted that Plaintiffs' claims all arose from or out of pollution caused by RRL." Defendant's Memorandum in Support of Motion for Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment ("Defendant's Memorandum"), at 12. Defendant claims that Mr. Turbin stated that

> [t]he claims made by our clients arise out of your insured's willful, wanton, and reckless conduct of causing dust contaminants and other pollutants to escape from its concrete crushing operations located on Pier 60 Sand Island Access Road, Honolulu, Hawai'i 96819.

*Id.*

Defendant states that on or about December 20, 2002, Plaintiffs entered into a settlement agreement with Resource and the State of Hawai'i. Pursuant to the agreement, Plaintiffs state that Resource

---

1. Defendant also issued a Third Policy to Resource for the period of June 18, 2000 to June

18, 2001; however, it is not a subject of dispute in this lawsuit.

and Swift "assigned to Plaintiffs all rights to benefits under any insurance policy, and all claims Resource and Swift may have against any insurer." Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment ("Plaintiffs' Memorandum"), at 2. According to Plaintiffs, litigation in the suit between Plaintiffs and Resource and Swift has been stayed pending a ruling in this declaratory judgment action regarding Scottsdale's duty to defend Resource and indemnify Swift. Plaintiffs filed a Complaint against Defendant on April 15, 2003, asserting claims for declaratory relief, breach of contract, and breach of the covenant of good faith and fair dealing.

## B. *PROCEDURAL BACKGROUND*

On December 3, 2003, Plaintiffs filed a Motion for Partial Summary Judgment ("Plaintiffs' Motion"). On this same date, Defendant filed a Motion for Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment ("Defendant's Motion"). Defendant filed its Opposition to Plaintiffs' Motion ("Defendant's Opposition") on February 5, 2004. Plaintiffs also filed their Opposition to Defendant's Motion ("Plaintiffs' Opposition") on February 5, 2004. Plaintiffs filed their Reply Memorandum to Defendant's Opposition on February 12, 2004 ("Plaintiffs' Reply"). Defendant filed its Reply Memorandum to Plaintiffs' Opposition on February 12, 2004 ("Defendant's Reply").

## *STANDARD OF REVIEW*

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any

genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party can neither stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *T.W. Elec. Serv.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire & Cas. Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

## *DISCUSSION*

## A. PLAINTIFFS' CLAIM THAT DEFENDANT BREACHED THEIR CONTRACT BY FAILING TO DEFEND RESOURCE

In Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment ("Plaintiffs' Memorandum"), Plaintiffs argue that this court should grant summary judgment, finding that Scottsdale had a duty to defend because Plaintiffs' allegations raise claims that could potentially fall within the scope of the policies' coverage. Plaintiffs' Memorandum, at 6. Scottsdale, on the other hand, asserts that the court should grant summary judgment, concluding that Scottsdale did not have a duty to defend under the policy. Defendant's Memorandum in Support of Motion for Summary Judgment, or in the Alternative, Motion for Partial Summary Judgment, at

13–15. The court considers both parties arguments, applying the existing case law.

■■■ The Hawai'i Supreme Court has made clear that if even a remote possibility exists that a claim is covered by an insurance policy, the insurer owes the insured a duty to defend. *See e.g., Standard Oil Co. of California v. Hawaiian Ins. & Guar. Co., Ltd.,* 65 Haw. 521, 654 P.2d 1345, 1349 (1982) (quoting *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* 212 Kan. 681, 512 P.2d 403, 407 (1973)). In fact, the court has explained that an insured bears a comparatively light burden with respect to a motion for summary judgment, *Dairy Road Partners v. Island Ins. Co.,* 92 Hawai'i 398, 992 P.2d 93, 108 (2000), and the courts resolve all doubts as to whether there is a duty to defend in favor of the insured. *Sentinel Ins. Co. v. First Ins. Co. of Hawai'i,* 76 Hawai'i 277, 875 P.2d 894, 904 (1994).

■■ The Hawai'i Supreme Court has also established that the duty to defend and the duty to indemnify are separate and distinct. *Dairy Road Partners,* 992 P.2d at 107. The duty to defend is much broader than the duty to indemnify. The court has stated that

'[a] duty of indemnity is owed to the insured for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion. The existence of such a duty depends upon the true state of facts surrounding the loss or injury .... The duty to defend, by contrast, does not depend on whether the injured party will prevail against the insured[.]'

*Id.* at 108 (quoting *Cole v. East Hartford Estates Ltd. P'ship,* No. CV 950547179S, 1996 WL 292135, *2 (Conn.Super. May 15, 1996)).

Plaintiffs argue that the language of the insurance policy is ambiguous and that pollution exclusions only apply to environmental pollution and hazardous substances. Plaintiffs' Memorandum, at 8. Plaintiffs assert that their allegations in the Amended Complaint should be construed to state claims for garden-variety trespass instead of widespread environmental pollution because they are asserting that materials from Resource's plant traveled from Resource's property and landed on their property and persons. Plaintiffs' Memorandum, at 19. Moreover, Plaintiffs allege that the physical contact between their persons and the materials gives rise to a claim of assault and battery. Plaintiffs contend that these occurrences do not constitute environmental pollution within the meaning of the policy. *Id.*

In addition, Plaintiffs assert that "dust" cannot constitute a "pollutant" under a reasonable definition of the term. Plaintiffs also suggest that because a possibility exists that Resource and Swift can be found liable for damage caused by Plaintiffs' inhalation of or exposure to natural or inert substances in addition to the dust, their claim could fall within the scope of the policy's coverage.

Plaintiffs further argue that the court should conclude that the pollution exclusion is inapplicable because it would defeat Resource's reasonable expectations of coverage. Plaintiffs contend that Scottsdale knew that Resource's business operations entailed concrete cutting, and that the insured reasonably expected for the policy to cover claims related to their general operations.

■ The court first considers whether the policy's language is ambiguous. The language of the pollution exclusion in the First Policy differs from the language of the Second Policy. The First Policy states:

2. Exclusions

This insurance policy does not apply to:

\*     \*     \*     \*     \*     \*

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants: ...

(a) At or from any premises, site or location on which is or was at any time owned or occupied by, or rented or loaned to, any insured ....

\*     \*     \*     \*     \*     \*

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

Defendant's Memorandum, at 17–18. The Second Policy included the following pollution exclusion:

Exclusion f. under paragraph 2., Exclusions of COVERAGE A–BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I–Coverage) is replaced by the following:

This insurance does not apply to:

f. (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutant means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

Defendant's Memorandum, at 18–19.

■ In examining the language of the pollution exclusion provision, the court first concludes that the language is not ambiguous. In *Lakeside Non–Ferrous Metals, Inc. v. Hanover Insurance Co.*, the Ninth Circuit considered whether the language of a pollution exclusion clause in a policy that Defendant Scottsdale issued to Plaintiff Lakeside was ambiguous. 172 F.3d 702 (9th Cir.1999). The language of the exclusion clause excluded claims

(1) to bodily injury or *property damage* arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.

The term "pollutants" means "any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste ... includ[ing] materials to be recycled, reconditioned or reclaimed."

*Id.* at 704 & n. 3. The Ninth Circuit concluded that "[t]he policy unambiguously proclaims that it does not cover property damage claims that are caused by pollution. We may not create ambiguity in language where none exists." *Id.* at 705 (internal citations omitted). In *Lakeside*, the Ninth Circuit was applying California law; however, this court notes that Cali-

fornia law is similar to Hawai'i law with regard to the burdens imposed on insurers. Under California law, an insurer is obligated to defend a party unless the party's complaint " 'can by no conceivable theory raise a single issue which could bring it within the policy coverage.' " *Id.* (quoting *Montrose Chem. Corp. v. Superior Court*, 6 Cal.4th 287, 24 Cal.Rptr.2d 467, 861 P.2d 1153, 1160 (1993) (internal citations omitted)). In considering the language of the policy at issue in this case, along with the Ninth Circuit's opinion in *Lakeside*, this court concludes that the pollution exclusion clause in this case is not ambiguous.

■ Next, the court must consider whether concrete dust constitutes a "pollutant" under the policy. The parties agree that there is no Hawaii case law that addresses the scope of pollution exclusions or whether concrete constitutes "pollution" under an exclusion clause. Plaintiffs' Memorandum, at 8; Plaintiffs' Reply, at 5; Defendant's Memorandum, at 19. However, Hawaii Revised Statute 342B is the chapter of the Hawaii Statutes that deals with Air Pollution Control. The section of this chapter that includes Definitions and General Provisions defines "fugitive dust" as "uncontrolled emission of solid airborne particulate matter from any source other than combustion." Haw.Rev.Stat. Ann. § 342B–1 (Michie 2000). Moreover Chapter 60.1 of the Hawaii Administrative Rules deals with Air Pollution Control and contains specific regulations related to fugitive dust. Section 11.60.1–33(a) states that "[n]o person shall cause or permit visible fugitive dust to become airborne

without taking reasonable precautions." Haw. Admin. Rules § 11–60.1–33(a) (2003).

In addition, while the Hawaii courts have not considered whether fugitive dust constitutes pollution, as Defendant points out, a Nevada district court has issued an opinion that has contemplated this question in detail. In *Connolly Development, Inc. v. Northbrook Property and Casualty Insurance Co.*, Plaintiff Connolly sued Defendant Northbrook for failing to defend or indemnify it against third party claims. No. CV–N–91–363–HDM, 1992 U.S. Dist. LEXIS 22175, *1 (D.Nev. Aug. 3, 1992). The parties filed cross motions for summary judgment with regard to the interpretation of the insurance policy's pollution exclusion provision. *Id.* They disagreed about whether the pollution exclusion precluded coverage for personal injury and property damage caused by the release of fugitive dust.[2] *Id.*

The court concluded that even though the exclusion clause did not specifically include the word "dust", this fact was not dispositive of whether it was included under the definition of a pollutant because the way the clause was written, it began with general descriptive terms followed by specific examples of pollutants. *Id.* at *3. The court stated that the specific words were non-exclusive examples of pollutants because the specific words followed the general words. The court then considered whether fugitive dust was an "irritant or contaminant." *Id.* at 4. The court consulted the dictionary definitions of these words and also considered the chapter of the

---

**2.** The language at issue in the policy stated:

The insurance does not apply to:
f(1) Bodily injury or property damage arising out of the actual or alleged or threatened discharge, dispersal, release or escape of pollutants . . .

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
*Id.* at *2.

Nevada Administrative Code that regulates air pollution. *Id.* at 4–5. This chapter included a definition of the term "fugitive dust." Based on these factors, the court concluded that dust was considered a form of air pollution under the county and state regulations and that dust constituted a solid irritant or contaminant. Thus the court held that the defendant did not have a duty to defend or indemnify plaintiff. *Id.* at 6.

In addressing the court's opinion in *Connolly,* Plaintiffs argue that since no Hawai'i cases directly deal with these questions, the court should not find dispositive the decision of the Nevada court. To support their argument, Plaintiffs cite a number of cases in which courts have concluded that an insurer had a duty to defend despite the inclusion of a pollution exclusion clause in the insurance policy. However, none of these cases that Plaintiffs cite deal with fugitive dust or materials resulting from crushing concrete. Moreover, courts other than the Nevada district court have concluded that dust is a pollutant, and consequently, an insurer was not required to provide coverage due to a pollution exclusion clause.

In *Henry Modell and Co., Inc. v. General Insurance Co. of Trieste & Venice,* an insured argued that its insurance company wrongfully denied it coverage for loss and damage to its property resulting from dust, dirt, and debris that traveled from a neighboring subway construction project to plaintiff's store. 193 A.D.2d 412, 597 N.Y.S.2d 75 (1993). The New York Supreme Court concluded that this incident was not covered by the insurance policy for a number of reasons, including the fact that "damage to the property was due to 'pollutants' or 'contaminants' specifically excluded from coverage under the policy's pollution exclusion." *Id.* at 76 (citations omitted).

Similarly in *Clarendon America Insurance Co. v. Bay, Inc.,* a Texas district court considered an insurance company's motion for summary judgment, which asked the court to declare that under the insurance policy's pollution exclusion clause, the insurance company had no duty to defend the insured cement company against property damage and personal injury claims brought by numerous plaintiffs. 10 F.Supp.2d 736 (S.D.Tex.1998). The court granted the insurance company's motion, concluding that the use of the term pollutants in the insurance policy included components of concrete, including sand, silica, gravel, dust, and fumes. *Id.* at 743–44.

Considering the Hawaii legislative and administrative materials that discuss "fugitive dust" and the existing case law pertaining to the applicability of pollution exclusion clauses to dust, this court concludes that the exclusion clause at issue in this case is not ambiguous. Furthermore, this court determines that fugitive dust is a pollutant. In addition to the fact that the chapter of the Hawaii Code that discusses air pollution control includes a definition of fugitive dust, the State of Hawaii's Department of Health, Clean Air Branch has issued a formal Notice of Finding of Violation against Resource for its fugitive dust violations. Plaintiffs, themselves, have pointed out that "[m]ost courts recognize that [a] 'pollutant is not merely any substance that may cause harm to the egg shell plaintiff, but rather it is a toxic or particularly harmful material which is recognized as such in industry or by governmental regulators.'" Plaintiffs' Memorandum, at 21 (quoting *Westchester Fire Ins. Co. v. City of Pittsburg,* 768 F.Supp. 1463, 1470 (Kan.1991) (internal quotation marks omitted)). Resource has been cited for its fugitive dust emissions by government

regulators. These facts support a conclusion that fugitive dust and Resource's actions to release it constitute environmental pollution.

■ In addition, the court finds unconvincing Plaintiffs' argument that while it is possible that toxic materials were released on their property as a result of Resource's operations, "there is also a possibility that the materials that fell on the Plaintiffs' property were neutral or chemically inert substances that would not meet a reasonable definition of the term pollutant." Plaintiffs' Memorandum, at 21. Plaintiffs have provided no facts or evidence to support this argument.

■ Finally, Plaintiffs attempt to argue that even if the pollution clause does apply, Resource's negligence is an independent and concurrent cause of the property damage and personal injury that Plaintiffs incurred, and thus Scottsdale had a duty to defend. Plaintiffs' Memorandum, at 23. Plaintiffs argue that the language in the First Policy precludes coverage for injuries "arising out of" the release of pollutants. *Id.* Plaintiffs maintain that courts construe this language narrowly and find that " 'coverage will not be excluded if the excluded clause is but one of several proximate causes of injury.' " *Id.* (quoting *Nationwide Mut. Fire Ins. Co. v. Nunn,* 114 N.C.App. 604, 442 S.E.2d 340, 344 (1994)). Plaintiffs contend that while some of the damages they incurred may have resulted from their direct contact with harmful substances, other damages may have resulted from their contact with natural or inert substances that are not encompassed in the definition of pollution. Plaintiffs' Memorandum, at 25. Furthermore, Plaintiffs state that their Complaint includes claims of direct negligence. *Id.* at 25–26.

As Defendant points out, the Ninth Circuit has adopted a more broad reading of the meaning of "arising out of" when inter-

preting insurance policy clauses, than the meaning that Plaintiffs encourage this court to adopt in this case. In interpreting a phrase in an insurance policy, the Ninth Circuit has stated that " '[a]rising out of' are words of much broader significance than 'caused by' ". They are ordinarily understood to mean " 'originating from' 'having its origin in,' 'growing out of' or 'flowing from' " or in short, 'incident to, or having connection with'. . ." *Continental Cas. Co. v. City of Richmond,* 763 F.2d 1076, 1080 (9th Cir.1985) (citations omitted).

In *Continental Casualty Company v. City of Richmond,* an insurer sought a declaratory judgment that its insurance policy did not cover the claims asserted in a civil rights and wrongful death action that parties brought alleging that police officers caused the death of an inmate. *Id.* at 1077. The insured argued that although the policy excluded coverage for the wrongful death claims, the policy independently covered the civil rights claims. Examining California state law, the court rejected the insured's argument based on the court's interpretation of the clause "arising out of" and its belief that the civil rights claims originated from the wrongful death of the inmate. *Id.* at 1082.

Like in *Continental Casualty,* this court rejects Plaintiffs' arguments because Plaintiffs' claims all originate from Resource's pollution through the release of fugitive dust. As a result, this court concludes that under the insurance policies, Scottsdale did not have a duty to defend Resource in its dispute with Plaintiffs.

### B. APPLICABILITY OF THE POLICY TO PLAINTIFFS' CLAIMS OF PRIVATE NUISANCE, TRESPASS TO CHATTELS, AND TRESPASS TO PERSON

■ Scottsdale additionally argues that Plaintiffs cannot circumvent the pollution

exclusion provision by arguing that their claims against Resource and Swift for private nuisance, trespass to chattels, and trespass to person are covered by the personal injury provision of the insurance policy. Scottsdale states that its policies delineate that

13. "Personal injury" means injury, other than 'bodily injury', arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

.    .    .    .    .

Defendant's Memorandum, at 34; Plaintiffs' Memorandum, Exhibit C. Defendant contends that provision 13(c) of the insurance policy cannot pertain to the dispute at issue because this provision only relates to landlord/tenant type claims. *Id.*

In considering Defendant's arguments, the court finds applicable the Ninth Circuit's decision in *Lakeside Non–Ferrous Metals, Inc. v. Hanover Insurance Co.* 172 F.3d 702 (9th Cir.1999). Plaintiff Lakeside was in the business of metal recycling, battery salvage, and chemical storage. *Id.* at 703. Lakeside was sued for contaminating land and surrounding waters, and it claimed that its insurance company, Scottsdale, had a duty to defend it. *Id.* Lakeside claimed that the pollution exclusion in the insurance policy did not preclude coverage because Lakeside argued that the common law trespass and nuisance claims fell within the policy's personal injury coverage provision. *Id.* at 705.

The Ninth Circuit noted that Lakeside was not the first insured that had tried to raise this argument when confronted with the harsh reality of a pollution exclusion clause. Applying California law, the court refused "to write a pollution exclusion out of an insurance policy by recasting a property damage claim as a personal injury claim unburdened by a pollution exclusion clause." *Id.* Moreover, the court noted that allowing plaintiff's claims to proceed under this theory would render the pollution clause "a dead appendage" to the policy. *Id.* at 706.

In Plaintiffs' Response, Plaintiffs do not respond to Defendant's arguments regarding the applicability of the personal injury provision to their claims. Regardless, like in *Lakeside*, this court concludes that the personal injury clause in the insurance policy does not cover Plaintiffs' claims for private nuisance, trespass to chattels, and trespass to person.

## C. PLAINTIFFS' CLAIM THAT DEFENDANT BREACHED ITS DUTY OF GOOD FAITH AND FAIR DEALING

In Count Three of Plaintiffs' Complaint, Plaintiffs allege that Scottsdale breached its duty of good faith and fair dealing when it refused to defend Resource and/or indemnify Swift. The Hawai'i Supreme Court has made clear that in determining whether an insurer acted in bad faith by denying coverage to an insured under a policy, "conduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith." *Best Place v. Penn Am. Ins. Co.,* 82 Hawai'i 120, 920 P.2d 334, 347 (1996) (citations omitted). Moreover, the Hawai'i Supreme Court has stated that an award of compensatory damages for acting in bad faith is not warranted simply if an insurance company made an erroneous decision under a policy. *Id.* (citation omitted).

At least one Hawai'i district court has granted an insurance company's motion for summary judgment, finding that the company did not act in bad faith by denying coverage, because the company's decision was reasonable. *Government Employees Ins. Co. v. Dizol*, 176 F.Supp.2d 1005, 1035 (D.Haw.2001). Furthermore, the court pointed out that there is no bad faith when an insurer denies payment of benefits based on an unsettled question of law. *Id.* Compare *Pacific Employers Ins. Co. v. Servco Pac. Inc.*, 273 F.Supp.2d 1149, 1158–59 (D.Haw.2003) (denying summary judgment when insured alleged that bad faith resulted from claims-handling aspects of denial of claim and when insured questioned whether a genuine dispute did exist as to insurer's duty to defend).

In the case presently before the court, it appears that Plaintiffs do not disagree with Defendant's assertion that at a minimum, there is a genuine dispute as to whether coverage existed under the insurance policy. In Plaintiffs' Reply, Plaintiffs state "[a]t the least, doubt and misunderstanding exist as to whether the pollution exclusions in Scottsdale's policies apply here." Plaintiffs' Reply, at 5. Moreover, with regard to the question of whether concrete is "pollution" under the exclusion clause, Plaintiffs have stated that "Hawai'i case law is silent on the issue, and case law from other jurisdictions is conflicting." *Id.* In fact, Plaintiffs have not directly responded to Defendant's contention that this court should dismiss their claim for breach of duty of good faith and fair dealing. Considering all of these factors, the court GRANTS Defendant's Motion for Summary Judgment with regard to this issue, concluding that Defendant's did not breach the duty of good faith and fair dealing when it decided not to defend Resource or indemnify Swift.

## CONCLUSION

For the reasons stated above, the court DENIES Plaintiffs' Motion for Partial Summary Judgment. The court GRANTS Defendant's Motion for Summary Judgment in its entirety.

IT IS SO ORDERED.