The **CHARTER OAK FIRE INSURANCE COMPANY**, Plaintiff,

v.

**ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY**, Defendant.

**Civil No. 13–00558 SOM/KSC.**

United States District Court, D. Hawaiʻi.

Signed Aug. 20, 2014.

Mark D. Peterson, Cates Peterson LLP, Newport Beach, CA, Sheree A. Kon–Herrera, Wesley H.H. Ching, Fukunaga Matayoshi Hershey Ching & Kop, Honolulu, HI, for Plaintiff.

John S. Edmunds, Joy S. Omonaka, Ronald J. Verga, Edmunds Verga & Omonaka LLC, Honolulu, HI, for Defendant.

### ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

SUSAN OKI MOLLWAY, Chief Judge.

## I. INTRODUCTION.

This motion calls upon the court to determine whether Endurance American Specialty Insurance Company owes VSE Corporation a duty to defend it from state-court claims arising out of an explosion that killed five people. VSE's insurer, The Charter Oak Fire Insurance Company, moves for summary judgment, asking this court to rule that Endurance owes a duty to defend VSE from those claims. Charter Oak also seeks a determination that Endurance's insurance policy is "primary" to Charter Oak's insurance policy. Charter Oak contends that the requested rulings require Endurance to reimburse Charter Oak for money spent defending VSE from such claims, and to provide VSE with a defense going forward. The court grants Charter Oak's motion with the caveat that any reimbursement obligation is limited to reasonable defense expenditures, the amount of which the record does not allow the court to determine.

## II. BACKGROUND FACTS.

VSE had a contract with the federal government to destroy seized fireworks. VSE subcontracted with Donaldson Enterprises, Inc., to have Donaldson destroy those fireworks. *See* ECF No. 23–3. On April 11, 2011, an explosion occurred where the fireworks were being stored that killed Bryan Dean Cabalce, Kevin Donor Freeman, Neil Benjamin Sprankle, Robert Leahey, and Justin Joseph Kelii. All five were Donaldson employees who were in the process of destroying the fireworks at the time of the explosion.

Four suits were filed in state court arising out of the deaths of the five Donaldson employees. The court refers to these actions as the "Liability Suits." *See* ECF Nos. 23–4 to 237. Each suit asserts similar claims arising out of the same facts. *Id.* Each of the suits has been removed to federal court. *See* Civ. Nos. 12–00373 JMS/RLP, 12–00376, JMS/RLP 12–00377 JMS/RLP, and 12–00391 JMS/RLP.

The complaint filed in connection with the death of Bryan Dean Cabalce, for example, alleges that, on or about April 8, 2011, Cabalce was killed in an explosion at a storage facility in which confiscated fireworks were being stored and destroyed. That complaint alleges that Cabalce was employed by Donaldson, which had been hired by VSE to store, transport, destroy, and dispose of illegal fireworks that had been seized by the federal government.

*See* ECF No. 23–4, ¶¶ 14–16, 21, PageID # 322. The complaint asserts: 1) that VSE was negligent in a number of ways (Count I); 2) that Thomas E. Blanchard & Associates, hired by VSE to inspect, monitor, and supervise the warehousing, storage, and destruction of the fireworks by Donaldson, was also negligent (Count II); 3) that VSE and Thomas E. Blanchard & Associates were liable for punitive damages (Count III); 4) that Defendants HIDC Small Business Storage, LLC; Hawaiian Island Development Co., Inc.; Hawaiian Island Homes Ltd.; Hawaiian Island Commercial Ltd.; and Ford Island Ventures, LLC, were the owners, lessees, and/or managing entities of the storage facility at which the explosion occurred and were also negligent (Count IV); and 5) that all the defendants were liable "under the theories of strict liability for breach of warranty, defective design, conducting an ultra-hazardous activity, breach of implied warranty of habitability, implied warranty of fitness for a particular purpose, other applicable warranties, *respondeat superior, res ipsa loquitur,* agency liability, partnership liability, and/or otherwise." ECF No. 23–4, ¶ 51, PageID # 330 (Count V).

Charter Oak, part of the Travelers insurance group, insured VSE under Policy Number P–630–1133x365–COF–11 for the policy period from January 1, 2011, through January 1, 2012. *See* ECF No. 23–14. Charter Oak has been providing VSE with a defense in the Liability Suits. *See* ECF No. 23–8.

On or about August 27, 2013, Charter Oak sent a demand to Endurance that Endurance reimburse Charter Oak for $637,672.98 that Charter Oak said it had paid defending VSE in the Liability Suits. *See* ECF No. 23–12, PageID # 414. By the time the present motion was filed, Charter Oak had apparently paid $968,000. *See* ECF No. 22–1, PageID # 255. By the

time the reply memorandum was filed, that amount may have grown to "nearly $1.5 million." *See* ECF No. 72, PageID # 1031. The court is not here determining what Charter Oak actually paid in defending the Liability Suits, noting only that it claims to have spent a significant amount in that defense and to be spending more as time passes.

Charter Oak seeks reimbursement of VSE's defense costs on the ground that VSE is an additional insured under the policy Endurance issued to Donaldson. *See* ECF No. 23–2 (copy of Policy Number ECC101003708–02 for policy period from November 15, 2010, to November 15, 2011). That policy includes Endorsement Number 5, which modifies the policy's Commercial General Liability Coverage. Endorsement Number 5 states, "Any person(s) or organization(s) whom the *Named Insured* agrees, in a written contract, to name as an additional insured .... for the project specified in that contract .... is included as an insured, but only with respect to that person's or organization's vicarious liability arising out of [Donaldson's] ongoing operations performed for that insured." ECF No. 23–2, PageID # 308. There is no dispute that VSE qualifies as an organization that Donaldson agreed in a written contract was an additional insured. According to Endorsement Number 16 to the Endurance policy, the Endurance policy is "primary" to other insurance. *See id.,* PageID # 309.

The Commercial General Liability Coverage included in the Endurance policy provides that, for "occurrences" taking place during the "policy period," Endurance "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." ECF No. 23–2, PageID # 287. The policy defines "occurrence" as "an accident, in-

cluding continuous or repeated exposure to substantially the same general harmful conditions." *Id.*, PageID # 296. The policy has multiple exclusions from coverage, including one for "pollution." *Id.*, PageID # 289. That exclusion excludes coverage for the following:

> "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" ... [a]t or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste.

*See* copy of policy attached to Concise Statement of Endurance, ECF No. 26–9, PageId # 782–83. The policy defines "Pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." ECF No. 23–2, PageID # 296.

On or about August 16, 2012, Endurance "agreed to defend VSE against the [*Cabalce* ] Lawsuit subject to a reservation of rights," noting that "there are significant coverage issues." *See* ECF No. 23–9, PageID # 393.

On October 17, 2013, Endurance reiterated that it had "previously agreed to defend VSE pursuant to a reservation of rights" and that it would "continue to defend VSE pursuant to a reservation of rights." *See* ECF No. 23–13, PageID # 417. Endurance reserved the right to withdraw from that defense and seek reimbursement for all funds paid for the defense. *Id.* Although the record includes statements by Endurance agreeing to defend VSE, Endurance has paid nothing towards VSE's defense.

On August 23, 2013, HIDC Small Business Storage, LLC, a storage facility defendant in the Liability Suits, filed a complaint in state court seeking a declaration that Endurance had a duty to defend and indemnify it under the insurance policy Endurance had issued to Donaldson. *See* ECF No. 26–11. Endurance filed a third-party complaint in that action against VSE on October 21, 2013, three days before Charter Oak filed the Complaint in the present action. The third-party complaint sought a declaration that Endurance had no duty to defend VSE (First Claim for Relief) or indemnify VSE (Second Claim for Relief) with respect to the Liability Suits. *See* ECF No. 26–2. On November 25, 2013, about one month after Charter Oak had filed the suit now before this court, VSE filed a counterclaim in state court against Endurance seeking a declaration that Endurance owed a duty to defend and indemnify VSE with respect to the Liability Suits. *See* ECF No. 26–12, PageID # s 922–29. The record before this court does not indicate the progress of the state-court coverage case since that time.

## III. SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (2010). *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000). The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *See id.* at 323, 106 S.Ct. 2548. A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted).

The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. At least some " 'significant probative evidence tending to support the complaint' " must be produced. *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). *See Addisu*, 198

F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348). *Accord Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc.*, 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *Id.* When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *Id.*

**IV. THE COURT DECLINES TO STAY THIS ACTION PENDING THE OUTCOME OF THE STATE–COURT DECLARATORY RELIEF INSURANCE COVERAGE CLAIMS.**

■ This court begins by examining whether it should reach the merits of the insurance coverage issues before it, given the coverage case pending in state court. The plaintiff in that case, a storage facility defendant in the Liability Suits, seeks a defense and indemnification from Endur-

ance. Endurance, three days before the lawsuit now before this court was filed, filed a third-party complaint in state court against VSE, seeking a declaration that it owed VSE neither a duty to defend nor a duty to indemnify with respect to the Liability Suits.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir.1979) ("[T]he court may order a stay of [an] action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it."). In addition, "the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

> Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Id.* at 288, 115 S.Ct. 2137 (footnote omitted).

That discretion, however, is not unfettered. *See Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir.1998) (en banc). Guidance on whether to stay an insurance coverage action pending resolu-

tion of an underlying state court action is provided by *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), and its progeny.

In *Brillhart*, the Supreme Court stated that it would ordinarily

> be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Brillhart*, 316 U.S. at 495, 62 S.Ct. 1173. *Brillhart* set forth a nonexhaustive list of factors to be considered in determining whether to stay or dismiss a federal court Declaratory Judgment Act case:

> Where a district court is presented with a claim such as was made here, it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*Id.*

 "The *Brillhart* factors remain the philosophic touchstone for the district court. The district court should avoid needless determination of state law issues; it should discourage litigants from filing

declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Dizol,* 133 F.3d at 1225 (citation omitted). The following additional factors are sometimes considered:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems.

*Id.* at 1225 n. 5 (quoting *Am. States Ins. Co. v. Kearns,* 15 F.3d 142, 145 (9th Cir. 1994) (J. Garth, concurring)) (some quotation marks omitted). District courts might also consider "the convenience of the parties, and the availability and relative convenience of other remedies." *Id.* (quoting *Kearns,* 15 F.3d at 145 (Garth, J., concurring)).

When there are parallel state proceedings, "there is a presumption that the entire suit should be heard in state court." *Id.* at 1225. However, the existence of a state-court action does not automatically bar a request for federal declaratory relief. *Id.* "[T]here is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Id.*

This court declines to stay this case in favor of the state-court action in which Endurance has filed a third-party complaint seeking a declaration that it has no duty to defend or indemnify VSE with respect to the claims in the Liability Suits. Although those coverage issues overlap the issues in this action, this case does not involve all of the same issues and parties.

First, the present case involves only the duty to defend. Any reference in the present case to indemnification is a reference to indemnification for defense costs, not for any judgment that might be entered against an insured in the Liability Suits.

Second, here, Charter Oak, VSE's insurer, as opposed to VSE itself, is seeking declaratory relief. VSE is not a party in the case before this court.

Third, the present action involves a claim that the Endurance policy is "primary" to the Charter Oak policy. *See* Complaint, ECF No. 1, PageID #11 ("Charter Oaks seeks a judicial determination of the rights and duties of itself on the one hand and Endurance on the other hand ..., including but not limited to the following issues: ... B. Whether Endurance's duty to defend VSE in the Underlying Actions is primary to Charter Oak's").

Because not all of the issues or parties in this case are identical to issues in the state-court action, this case is not entirely "parallel" to the state-court case.

Nor does this case appear to involve a needless determination of state law. Instead of turning on unsettled issues of state law, the coverage issues raised by the present motion appear to turn on factual issues. *See Allstate Ins. Co. v. Davis,* 430 F.Supp.2d 1112, 1120 (D.Haw.2006). In particular, as discussed in greater detail later in this order, exactly how the fatal explosion occurred will affect whether policy provisions apply.

Although the complaint commencing the lawsuit in state court was filed by a storage company on August 23, 2013, about two months before the Complaint in the present action was filed on October 24, 2013, the third-party complaint in which Endurance raised the issue of any obligation owed to VSE was filed on October 21, 2013, only three days before Charter Oak commenced the present action against

Endurance. Nothing in the record establishes that Charter Oak even knew about Endurance's third-party complaint in state court at the time Charter Oak filed the Complaint in this case. This court has no basis for concluding that the present case was filed to obtain a "res judicata" effect or to "forum shop."

The parties have not informed this court what progress has been made in state court. This court understands that, if it allows the case before it to proceed, Endurance will have to litigate coverage disputes with different parties simultaneously in state and federal court. That burden, however, is likely to be short-lived. This court's determination in this order that Endurance has a duty to defend VSE leaves little for further adjudication in this district court. The court also notes that any inconvenience is not geographic; the state-court action is proceeding in a building right across the street from this court. Moreover, any inconvenience inflicted on Endurance by having to litigate in two separate courts would be at least matched by the inconvenience Charter Oak would suffer if this court were to abstain, forcing Charter Oak to attempt to join the state-court action, file a separate declaratory action in state court, or face uncertainty about its obligations for the duration of the state-court action.

## V. ENDURANCE HAS A DUTY TO DEFEND VSE, WHICH INCLUDES A DUTY TO REIMBURSE CHARTER OAK FOR THE REASONABLE DEFENSE COSTS INCURRED IN DEFENDING VSE FROM THE LIABILITY SUITS.

### A. General Law Concerning Insurance Policies.

This is a diversity action. *See* Complaint, ECF No. 1, PageID # 2. Federal courts sitting in diversity apply state substantive law and federal procedural law. *See Snead v. Metro. Prop. & Cas. Ins. Co.,* 237 F.3d 1080, 1090 (9th Cir.2001). When interpreting state law, a federal court is bound by the decisions of a state's highest court. *Ariz. Elec. Power Coop. v. Berkeley,* 59 F.3d 988, 991 (9th Cir.1995). In the absence of such a decision, federal courts attempt to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. *Id.; see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc.,* 383 F.3d 940, 944 (9th Cir.2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." (quotation and brackets omitted)).

 Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts. *Dawes v. First Ins. Co. of Haw.,* 77 Hawai'i 117, 121, 883 P.2d 38, 42 (1994). Insurance policies must be read as a whole and construed in accordance with the plain meaning of its terms, unless it appears that a different meaning is intended. *Id.* at 121, 883 P.2d at 42; *First Ins. Co. of Haw. v. State,* 66 Haw. 413, 423, 665 P.2d 648, 655 (1983); *see also* Haw.Rev.Stat. § 431:10–237 (Michie 2011) ("[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy").

 Because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured, and any ambiguities must be resolved against the insurer. Put another way, the rule is that policies are to be construed in accordance with the reasonable expectations of a layperson. *Tri–S Corp. v. W. World Ins.*

*Co.*, 110 Hawai'i 473, 489, 135 P.3d 82, 98 (2006) (citations omitted); *Dawes*, 77 Hawai'i at 131, 883 P.2d at 42.

 This court is concerned here with whether Endurance has a duty to defend VSE. The duty to defend arises when there is any potential or possibility for coverage. *Sentinel Ins. Co. v. First Ins. Co. of Haw.*, 76 Hawai'i 277, 287, 875 P.2d 894, 904 (1994) (as amended on grant of reconsideration). "In other words, the duty to defend rests primarily on the *possibility* that coverage exists. This possibility may be remote, but if it exists, the insurer owes the insured a defense." *Id.* (alterations, quotation marks, and citations omitted). Any doubt as to the duty to defend "is resolved against the insurer and in favor of the insured." *Id.* (citation omitted).

However, when the pleadings fail to allege any basis for recovery under an insurance policy, the insurer has no duty to defend. *Pancakes of Hawai'i v. Pomare Props.*, 85 Haw. 286, 291, 944 P.2d 83, 88 (1997). For this court to conclude that Endurance has no duty to defend VSE from the Liability Suits, the court must determine that it would be impossible for a claim in the underlying Liability Suits to be covered by Endurance's insurance policy. *See Dairy Road Partners*, 92 Hawai'i at 412–13, 992 P.2d at 107–08.

 Because the duty to defend turns on the possibility of coverage, this court looks at how coverage is determined.

The burden is on the insured to establish coverage under an insurance policy. *See Sentinel*, 76 Hawai'i at 291 n. 13, 875 P.2d at 909 n. 13. The insurer has the burden of establishing the applicability of an exclusion. *See id.* at 297, 875 P.2d at 914.

 The duty to indemnify is owed "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion." *Dairy Road Partners v. Island Ins.*, 92 Hawai'i 398, 413, 992 P.2d 93, 108 (2000). The obligation to defend an insured is broader than the duty to indemnify.

**B. Endurance has a Duty to Defend VSE under the Comprehensive General Liability Insurance Coverage Issued to Donaldson.**

Charter Oak seeks a determination that Endurance has a duty to defend VSE under the Comprehensive General Liability Coverage of the policy Endurance issued to Donaldson, under which VSE was an "additional insured." While Endurance argues that it owes no duty to VSE under other coverages provided by that policy, those arguments are irrelevant to the present motion.[1]

There is no dispute that the Liability Suits assert claims of "bodily injury" arising out of an "occurrence" (an accident) during the "policy period" for purposes of the Comprehensive General Liability Cov-

---

1. Endurance argues that there is no coverage under the policy's Professional Liability Coverage because Endorsement Number 5 does not make VSE an "additional insured" with respect to that coverage. Endurance also argues that it owes no duty under the Contractor's Pollution Liability Coverage because the policy excludes from coverage intentional, willful, and deliberate noncompliance with statutes, regulations, ordinances, etc. Endurance further argues that, under the Contrac-

tor's Pollution Coverage, there is a limit for "claims expenses," and that defense fees should be shared on a "pro rata" basis. If this court concludes that Endurance owes VSE a duty to defend under the Comprehensive General Liability Coverage, the issue of whether a duty to defend is or is not owed under other parts of Endurance's policy need never be reached. In any event, no one is asking the court to find any duty under those other coverages at this time.

erage of the policy Endurance issued to VSE. Endurance instead argues that VSE is not an "additional insured" and that, even if it is, Endurance owes VSE no duty to defend because coverage is excluded by the "pollution" exclusion. The court is not persuaded by Endurance's arguments.

### 1. VSE is an Additional Insured Under the Comprehensive General Liability Coverage.

 Although VSE is indisputably named as an "additional insured" for purposes of Endorsement Number 5, Endurance argues that it owes no duty to VSE as an "additional insured" because that endorsement applies only to claims of vicarious liability arising out of Donaldson's ongoing operations. Endurance contends that the Liability Suits state no claim for such vicarious liability. This court disagrees.

Section 59 of the Restatement (Third) of Torts discusses the vicarious liability of a person who hires an independent contractor to perform an activity that poses a peculiar risk. That section states:

> An actor who hires an independent contractor for an activity that the actor knows or should know poses a peculiar risk is subject to vicarious liability for physical harm when the independent contractor is negligent as to the peculiar risk and the negligence is a factual cause of any such harm within the scope of liability.

Illustration 3 of that section states:

> The County hires a private prisoner transportation service to move several prisoners from one prison to another. The van provided by the service is designed with four separately locked cells; each cell holds up to three prisoners. The lock on one of the cells does not function properly due to careless maintenance by the service. A prisoner riding in the cell works open the lock,

breaks out of the cell, and tries to overpower the driver; the van crosses several lanes of traffic and hits another vehicle, injuring the other driver. Leaving aside possible issues of immunity, the County is subject to vicarious liability to the other driver under this Section because transporting prisoners is an activity that poses a peculiar risk.

The Liability Suits allege that Donaldson was hired by VSE "to warehouse, store, transport, dismantle and dispose of fireworks and other explosives seized by the government." ECF No. 23–4, PageID # 325. The complaints in the Liability Suits allege that VSE is liable for its own negligence, as well as for the negligence of its employees, agents, and/or representatives. *Id.* Protected from employees' negligence suits by Hawaii's worker's compensation law, Donaldson is not named as a defendant in the Liability Suits. Nevertheless, the question of whether any Donaldson employees were VSE's "employees, agents, and/or representatives" is at least arguable on the record before this court. Accordingly, the court reads the complaints in the Liability Suits as asserting claims based on the acts and/or omissions of Donaldson employees that the plaintiffs in those actions appear to be alleging VSE is vicariously liable for. This assertion, if viewed as consistent with section 59 of the Restatement (Third) of Torts, concerns more than simple, direct negligence on the part of VSE.

The court recognizes that reading the complaints in the Liability Suits as including vicarious liability assertions risks reading the complaints as alleging that Donaldson employees themselves committed negligent acts that VSE is vicariously liable for. It would, of course, be anomalous for any plaintiff to allege a plaintiff's own contributory or comparative negligence in a complaint. But that is not the only

reading that would give meaning to a vicarious liability claim. The plaintiffs in the Liability Suits could be alleging that VSE is vicariously liable for the acts of Donaldson actors other than themselves.

Interestingly, Endurance has included in the record before this court a report by the U.S. Chemical Safety and Hazard Investigation Board, which conducted an investigation following the fatal explosion. The reports noted that the Bureau of Alcohol, Tobacco, Firearms and Explosives had concluded:

> that the explosion was likely triggered when loose explosive pyrotechnic powder, initially generated as the fireworks were disassembled outside, spilled or leaked from the boxes onto the storage magazine floor and was ignited due to a friction or a metal-to-metal spark as [Donaldson] employees moved materials around inside the magazine.

ECF No. 26–14, PageID # 975. The same report concluded that VSE had not had personnel with the necessary background and expertise to recognize the hazards associated with Donaldson's fireworks disposal and had deferred to Donaldson's expertise. *Id.*, PageID # 993. The report noted that it was Donaldson that had "developed a fireworks disposal methodology that evolved into disassembling seized fireworks and separating and accumulating their explosive components—black powder and aerial shells—into cardboard boxes." *Id.*, PageID # 1004. This "created a much larger explosive hazard than the original fireworks represented." *Id.*

The court is not called upon to determine what actually happened and is certainly not undertaking that task here. Nor is the court suggesting that vicarious liability should attach. Referring above to the discussion in the report, the court seeks only to show that, not only is reading the complaints in the Liability Suits as asserting vicarious liability claims against VSE consistent with the language of those pleadings, it is consistent with inferences in other materials in the record.

## 2. Endurance Fails to Demonstrate that the Policy's Pollution Exclusion Applies.

 The court turns next to the policy's pollution exclusion. *See* Policy, ECF No. 23–2, PageID # 289. That exclusion states that coverage is excluded for

> "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" ... [a]t or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste.

*See* copy of policy attached to Concise Statement of Endurance, ECF No. 26–9, PageID # 782–83. The policy defines "Pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." ECF No. 23–2, PageID # 296.

Arguing that the fireworks qualify as "waste," Endurance says that the explosion was an "actual ... discharge of 'pollutants'" that caused bodily harm and that such harm falls under the pollution exclusion contained in the policy. The burden is on Endurance to establish the applicability of the pollution exclusion. *See Sentinel*, 76 Hawai'i at 297, 875 P.2d at 914. This court is unpersuaded that the pollution exclusion so clearly applies that Endurance is relieved of even the duty to defend.

If this were VSE's motion seeking to establish Endurance's duty to defend, VSE, as the insured, would only have to

establish a possibility that the claims against it were covered. *See Dairy Road Partners,* 92 Hawai'i at 413, 992 P.2d at 108. Even with Charter Oak as the movant, this court concludes that Endurance may not rest on the pollution exclusion as relieving it of a duty to defend VSE, given the possibility that the exclusion is inapplicable.

The California Supreme Court examined a pollution exclusion in detail in *MacKinnon v. Truck Insurance Exchange,* 31 Cal.4th 635, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (2003). That case involved an insurer's contention that the pollution exclusion in a comprehensive general liability insurance policy issued to an apartment owner excluded coverage for claims against the owner for the death of a tenant caused by the spraying of a pesticide intended to eradicate yellow jackets in the apartment building. *Id.,* 3 Cal.Rptr.3d 228, 73 P.3d at 1207. Noting that the scope of the pollution exclusion had been "litigated extensively in other jurisdictions," the court remarked, "To say there is a lack of unanimity as to how the clause should be interpreted is an understatement."[2] *Id.,* 3 Cal.Rptr.3d 228, 73 P.3d at 1208.

The California Supreme Court determined that the insurer's contention would lead to "absurd results" and ignore "the familiar connotations of the words used in the exclusion." *Id.,* 3 Cal.Rptr.3d 228, 73 P.3d at 1216. The policy at issue in that case, like Endurance's policy, defined "pollutant" as "any solid, liquid, gaseous or thermal any irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste materials." *Id.,* 3 Cal.Rptr.3d 228, 73 P.3d at 1207. Quoting *Regional Bank of Colorado v. St. Paul Fire and Marine Insurance Company,* 35 F.3d 494 (10th Cir.1994), the court noted that a reasonable policy holder would not have understood the policy to exclude coverage for "*anything* that irritate[d]." Instead, the court reasoned that "irritant" had to be "construed in the context of how it is used in the policy, i.e., defining 'pollutant.'" *Id.,* 3 Cal.Rptr.3d 228, 73 P.3d at 1216. The court relied on the following statement from *Regional Bank of Colorado:*

> While a reasonable person of ordinary intelligence might well understand carbon monoxide is a pollutant when it is emitted in an industrial or environmental setting, an ordinary policyholder would not reasonably characterize carbon monoxide emitted from a residential heater which malfunctioned as "pollution." It seems far more reasonable that a policyholder would understand it as being limited to irritants and contaminants commonly thought of as pollution and not as applying to every possible irritant or contaminant imaginable.

*MacKinnon,* 3 Cal.Rptr.3d 228, 73 P.3d at 1216 (quoting 35 F.3d at 498).

The *MacKinnon* court limited the pollution exclusion to injuries arising from events commonly thought of as pollution, "i.e. environmental pollution." *Id.* With

---

**2.** In *Group Builders, Inc. v. Admiral Insurance Company,* —— Hawai'i ——, 2013 WL 1579600, *10 (Haw.Ct.App. Apr. 15, 2013), the Hawaii Intermediate Court of Appeals noted that the insurer owed a duty to defend "because the courts were split as to whether construction defect claims constituted an 'occurrence' under a CGL policy." This is not a position that has been articulated by the Hawaii Supreme Court. On the present motion, this court need not examine whether, because it raises the possibility of coverage, a split of authority automatically triggers a duty to defend. *See Sentinel,* 76 Hawai'i at 287, 875 P.2d at 904 (insurer owes duty to defend if there is any possibility of coverage and any doubt must be resolved in favor of insured). There are grounds independent of any split that require Endurance to provide VSE with a defense.

the term so limited, the court concluded that the pollution exclusion did not exclude coverage for the wrongful death claims arising out of the spraying of a pesticide. *Id.*, 3 Cal.Rptr.3d 228, 73 P.3d at 1218.

· In the District of Hawaii, at least two federal judges have interpreted Hawaii law as diverging from the articulation of California law in *MacKinnon.* In *Apana v. TIG Insurance Company,* 504 F.Supp.2d 998 (D.Haw.2007), Judge J. Michael Seabright determined that the pollution exclusion at issue in that case excluded coverage for injuries caused when a plumber "poured an extremely strong drain cleaner down the maintenance drain, releasing noxious fumes" at a Wal–Mart store. *Id.* at 1001 and 1006. Judge Seabright ruled that the insurer had no duty to indemnify, predicting that the Hawaii Supreme Court would find that the discharge of an extremely strong drain cleaner into the air falls within the pollution exclusion "under a plain, common, and ordinary understanding." *Id.* at 1006. Judge Seabright rejected any limitation of the pollution exclusion to environmental pollution, given the absence of such a limitation in the exclusion itself. *Id.* Judge Seabright, did however, note that the interpretation of the pollution exclusion under the facts in that case involved "an open question under Hawaii law." *Id.* at 1004. Adopting the notion that uncertainty about the law triggers a duty to defend, he ruled that the insurer had a duty to defend its insured given the possibility that the insured was entitled to indemnification. *Id.*

In *Allen v. Scottsdale Insurance Company,* 307 F.Supp.2d 1170 (D.Haw.2004), Judge David Alan Ezra similarly applied a pollution exclusion to exclude coverage under an insurance policy. In that case, the · issue of insurance coverage concerned claims of allergic reactions and other physical and emotional injuries caused by the

escape of concrete dust from a concrete recycling plant. *Id.* at 1172. Like Judge Seabright in *Apana,* Judge Ezra concluded that the pollution exclusion was unambiguous and that concrete dust qualified as a "pollutant." *Id.* at 1176–78. However, he concluded that the insurer lacked even a duty to defend its insured. *Id.* at 1179.

Because only the duty to defend is at issue in the case before this court, this court need not decide whether the pollution exclusion actually applies here. This court only needs to determine whether coverage is possible, i.e., whether there is a possibility that the exclusion is inapplicable. *See Dairy Road Partners,* 92 Hawai'i at 412–13, 992 P.2d at 107–08.' Unlike in *Apana* and *Allen,* this case does not clearly involve something that is a "pollutant." Of course, like the drain cleaner in *Apana,* fireworks are inherently dangerous. Fireworks might be considered hazardous waste on their own, but it was not the fireworks themselves that caused the injury. Unlike the drain cleaner (or the dust in *Allen*), fireworks can sit out exposed without necessarily emitting fumes, causing irritation, or generating what a layperson would consider pollution.

Even if the court looks at the flammable components of the fireworks, not at the manufactured fireworks, the mere presence of those components did not cause any irritation or contamination, so it is not clear that the components fit the definition of "pollutants" for purposes of this case. "Pollutants" are defined as "any solid, liquid, gaseous or thermal irritant or contaminant." ECF No. 23–2, PageID # 296. Endurance points out that the definition goes on to say "including smoke, vapor, soot, fumes, acids, alkalis, ·chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." *Id.* According to Endurance, because what Donaldson was destroying should qualify

as "waste," it also qualifies as a "pollutant." This court reads the words following "including" as examples of "irritants" or "contaminants." That is, "waste" cannot be a "pollutant" without being an "irritant" or "contaminant." Because "waste" does not expand the definition of "pollution" beyond "irritants" and "contaminants," some forms of "waste" (i.e., waste that is neither an "irritant" nor a "contaminant") may not necessarily be "pollutants." Thus, while "vapor" is part of the list that includes "waste," not all "vapors" are "pollutants." Water vapor, when it is not an "irritant" or "contaminant," would not be a "pollutant."

Even if pollutants could be said to be unquestionably involved here, the possibility remains that the pollution exclusion is inapplicable and that coverage is available under Endurance's policy. The components might not have caused the injuries at the heart of the Liability Suits had they not ignited. Unlike a coverage provision, an exclusion is read narrowly. *See Island Ins. Co. v. Arakaki*, 123 Hawai'i 299, 2010 WL 2414924, *6 (Haw. Ct.App. June 16, 2010) ("Hawai'i courts construe the exclusions in policies narrowly.");[3] *see also Fortune v. Wong*, 68 Haw. 1, 10, 702 P.2d 299, 305 (Haw.1985) (approving general proposition that insurance policies are construed broadly and exclusions are construed narrowly). The pollution exclusion provides for exclusion of coverage for bodily injury arising out of the "discharge, dispersal, seepage, migration, release or escape" of pollutants. Even if the fatal explosion could be said to have "arisen out of" the presence of the fireworks or their components, and even if the fireworks or their components were "pollutants," it is not at all clear that, in the Liability Suits,

VSE is being sued in connection with an explosion allegedly arising out of "the discharge, dispersal, seepage, migration, release or escape" of pollutants.

For example, in paragraph 25 of the complaint filed in the *Cabalce* case, the plaintiffs in that case allege:

25. VSE failed its safety responsibilities in, among other things, allowing the disposal of explosives and fireworks in the same location where the explosives and fireworks were being stored; the use of tools which could cause ignition and/or explosion of the explosives and fireworks; the use of equipment such as pumps powered by electrical motors which could cause ignition and/or explosion of the explosives and fireworks; the storing and disposal of explosives and fireworks in an environment that was susceptible to static electricity which could cause ignition and/or explosion of the explosives and fireworks; storing and dismantling explosives and fireworks in the same location where other flammable and explosive materials such as diesel oil were also being kept or used; dismantling fireworks and explosives in a confined space; using a flammable material such as diesel oil to dismantle the fireworks and explosives; and/or conducting storage and dismantling operations of explosives and fireworks without an adequate safety plan, analysis and/or warnings.

ECF No. 23–4.

Static electricity and sparks from electrical equipment are cited as possibly having ignited the fireworks or fireworks components. If the fireworks exploded after catching on fire via static or an equipment spark, it is difficult to see how the "discharge, dispersal, seepage, migration, re-

---

**3.** After July 1, 2008, any disposition of the Hawaii courts, including unpublished opinions, may be cited in any proceeding. Such unpublished dispositions "are not precedent, but may be cited for persuasive value." Haw. R.App. P. 35(c).

lease or escape" of pollutants could be said to have caused the death of Donaldson employees, even assuming the fireworks or the fireworks components are pollutants.

This court stresses that it is not here opining on the cause of the explosion. Rather, the court is confining itself to examining what VSE is being sued for, and comparing those claims to what is covered and what is excluded. That examination and comparison do not permit the conclusion that the existence of the pollution exclusion leaves no possibility of coverage. Endurance therefore owes VSE a duty to defend it in the Liability Suits notwithstanding the pollution exclusion.

### C. Endurance's Insurance Policy is "Primary."

 Having determined that Endurance owes a duty to defend VSE, the court turns to the relationship between the Endurance and Charter Oak policies. Endorsement Number 16 to Endurance's policy states that "it is hereby agreed that this policy shall be considered primary to any similar insurance held by third parties in respect to work performed by you [Donaldson] under any written contractual agreement with such third party." *See* ECF No. 23–2, PageID # 309. Under this provision, Endurance's obligation to defend and indemnify VSE under its policy is "primary" to Charter Oak's obligation.

Endurance argues that, instead of being primarily responsible for those costs under Endorsement Number 16, it need only share defense costs. In that regard, Endurance points to the Contractor's Pollution Liability Coverage, which states,

K. OTHER INSURANCE

If any part of either *damages* or *claims* expenses is insured under this Policy and any other current, prior or subsequent Policy, the Policy shall provide coverage for such *damages* or *claims*

*expenses* on a pro rata basis with such other Policy according to the applicable Limits of Liability of this Policy and such other Policy.

As noted above, the Contractor's Pollution Liability Coverage is not at issue on this motion, and the Comprehensive General Liability Coverage provisions contain no analogous pro rata provision.

### VI. ENDURANCE'S RULE 56(d) REQUEST IS DENIED.

At the hearing on the motion, Endurance requested a continuance of this motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, claiming that it needed to conduct discovery as to the cause of the explosion. That request is denied.

Endurance submitted no affidavit or declaration explaining why, without discovery, it could not present facts essential to justifying its opposition. Such an explanation is required by Rule 56(d). Moreover, it is not clear how discovery into the cause of the explosion would affect this court's determination as to whether Endurance has a duty to defend VSE from the Liability Suits. The claims in the complaints filed in the Liability Suits control whether a duty to defend is triggered, regardless of whether those claims are ultimately proven to be meritorious.

### VII. CONCLUSION.

Partial summary judgment is granted in favor of Charter Oak. Endurance owes VSE a duty to defend VSE from the Liability Suits, and Endurance's policy is "primary" to Charter Oak's policy. Endurance must reimburse Charter Oak for reasonable amounts spent defending VSE. The court does not here decide what amount is reasonable. Endurance is ordered to begin providing VSE with a defense forthwith.

If the parties anticipate asking the court to determine the amount that Endurance must reimburse Charter Oak for, a motion seeking that determination must be filed no later than September 30, 2014. Before filing any such motion, the parties must meet and confer in an attempt to agree as to amounts and/or particular issue(s).

IT IS SO ORDERED.